52 N.J. Super. 115 (1958)
145 A.2d 33
CATHERINE FLYNN, AN INFANT BY HER PARENT AND GUARDIAN AD LITEM, ARTHUR J. FLYNN, AND ARTHUR J. FLYNN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
THORNTON STEARNS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1958.
Decided October 3, 1958.
*117 Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. Herbert E. Greenstone argued the cause for plaintiffs-appellants (Messrs. Greenstone & Greenstone, attorneys; Mr. Frederick C. Vonhof, of counsel).
Mr. William P. Braun argued the cause for defendant-respondent (Messrs. Braun & Hoey, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
This is a medical malpractice case. There was a verdict for defendant, and plaintiff appeals from the resulting judgment.
On June 2, 1950 the plaintiff, then eight years old, broke her arm. She was taken immediately to a hospital and placed under the care of defendant, a specialist in orthopedics. The defendant diagnosed her injury as a "super condylar fracture, right humerus." Defendant twice attempted a closed reduction of the fracture, but the result was not satisfactory. Therefore, on June 13, defendant did an "open reduction"  that is, with surgery under anesthesia, during which the flesh was cut to expose the bone and the ends of the fracture were joined.
The wound became infected and her temperature rose. Consequently, on the day after the operation defendant split the cast and exposed the wound to allow it to drain. That, and antibiotics and other treatment, gradually lowered her temperature but not sufficiently. Defendant testified that therefore on July 7 he "opened the wound entirely and put some vaseline gauze in it to keep it open and then the drainage could completely drain out and the wound could heal." The wound thereafter did heal completely, and on *118 July 18 plaintiff was discharged from the hospital. The union of the fracture was good, and plaintiff makes no complaint about the bone condition which resulted. What plaintiff contends is that the infection which set in after the operation affected the tissue in the elbow in a manner which caused her to lose the ability to bend it. One of defendant's own experts testified that he was "of the positive opinion that if infection had not developed * * * the child would have obtained a good result."
When she was discharged from the hospital plaintiff could move her elbow "over a range of only 20 degrees," according to defendant's note in the hospital record. Consequently, he directed her to come to his office for physiotherapy. There, he testified, "I worked over her to get motion for a period of two months." On August 14 he noted "Patient holds a one pound wt. in hand with elbow on table. This stretches scar tissue at elbow & allows extension. Hand can be raised to mouth. Movt. over 50° range. There is definite progress but still limited flexion. Extension to 135° ."
Defendant treated plaintiff for the last time on September 25, 1950. Plaintiff's parents testified that on that date defendant told them he could do nothing further for the plaintiff, except possibly another operation when she was older, and he terminated the treatments at his office. However, he testified that he did instruct plaintiff and her parents to continue the stretching exercises at home. Those exercises consisted principally of carrying and lifting an iron or other weight for some period each day. Plaintiff never came back to defendant for further examination or treatment after September 25, 1950.
Plaintiff did not continue the exercises. Defendant testified that with the exercises he "expected * * * that she would have a much better range of motion," but he admitted he never expected the elbow to go back to normal. There was no testimony as to how long the exercises would have to continue to secure maximum benefit, or what that maximum benefit would be. This action was not started until six years later, and the trial was seven years later. During *119 those years the stiffness in the elbow had increased and plaintiff had lost even the motion she had when she last saw Dr. Stearns. The testimony was that her range of motion had, as the court below said, "diminished to minimal."
Plaintiff bases her action against defendant mainly upon two grounds. First, she charges that defendant did not take proper precautions against infection in performing the operation for open reduction. Second, she charges that the open reduction was unnecessary, for had defendant used a portable x-ray while attempting the "closed reduction"  that is, by manipulation  he would have been able to "set" the fracture without any operation.
In support of the proposition that the infection was due to defendant's negligence plaintiff adduced testimony that after she entered the hospital and before the open reduction she developed an infection, skin or systemic, which caused purulent blisters on her injured arm, including the area about her elbow; that at such a time an open reduction should not be done except in a great emergency, which admittedly did not exist in the case at bar; that defendant nevertheless did operate in the area of the blisters; and that in addition he took insufficient steps, and allowed insufficient time, to prepare the blistered area for the operation. As a result, said plaintiff's expert, the infection entered the wound, causing the injury.
Defendant denies these charges. He testified that he did use a portable X-ray on the occasions when he attempted the closed reduction; that the blisters or "blebs" had dried up and healed sufficiently before he operated, to justify the operation; and that he took all the time and the precautions that competent orthopedic specialists took in 1950 to prepare such an arm for the operation. Plaintiff contends that in that posture of the evidence it was error for the trial judge to charge the jury as he did (emphasis ours):
"* * * If you find that * * * there is no contributory negligence upon this young lady's part, then you would find a verdict for the plaintiff and you would turn then to the question of money damages.
*120 There is a defense in this case. The defendant charges that this young lady was guilty of contributory negligence. In other words, they say, assuming but not admitting that the doctor is negligent, nevertheless this young lady was guilty of contributory negligence. The burden of proving contributory negligence is upon the person who asserts it: Dr. Stearns asserts it. I think the theory of that negligence is that this young lady failed to follow the directions which Dr. Stearns ordered at the time he discharged her, which I think was in the month of October.
You will recall that on that date, when Dr. Stearns discharged her, there was a considerable loss of motion in the elbow. My recollection is that Dr. Stearns said she then had 50 degrees of motion, which has since diminished to `minimal' which was the phrase they used, and I suggest to you that the failure to follow Dr. Stearns' instructions  you will remember what they were, something about carrying an iron to stretch those tendons and muscles  goes perhaps not to the question of contributory negligence of this child but goes rather to the question of whether or not or the extent to which her failure to follow those instructions may have resulted in a greater disability than she would have if she had followed those instructions. * * *"
Later in the charge he said:
"I have suggested to you that while the defense of contributory negligence by the child is raised, and that while it must be considered by you as to whether her failure to carry out Dr. Stearns' instructions at the time of his separation from the case in October, contributed in any degree to the happening of this accident. If you find that it did, in other words that the child herself, and remember she was then a child of tender years, eight years of age, and could not be held to the standards of a grownup, if she contributed to this happening then she cannot recover in this case, and again your verdict would be no cause for action.
I further suggested to you, and suggest again that perhaps her failure to carry out instructions may go, rather than to her negligence, but to whether or not it aggravated or whether she felt she should take reasonable steps to minimize the injury. * * *"
Appellant contends that this charge was erroneous because "Negligence of the patient, to constitute a bar to the suit, must have been an active and efficient contributing cause of the injury; it must have been simultaneous and cooperating with the fault of the defendant, must have entered into the creation of the cause of action, and have been an element in the transaction which constituted it. Where the fault of the patient was subsequent to the fault of the *121 physician and merely aggravated the injury inflicted by the physician, it only affects "the amount of the damages recoverable by the patient." This is a correct general statement of the law. 41 Am. Jur., Physicians & Surgeons, sec. 80, p. 199; Annotations: 50 A.L.R.2d 1043 and 17 L.R.A., N.S., 1242. Appellant says that since here the fault, if any, of the plaintiff was subsequent to the fault of the defendant it was not a proximate contributing cause of the injury, and it should have been submitted to the jury, if at all, only as bearing on the issue of damages, and not as a basis for a finding of contributory negligence.
Although it is frequently said that the "general rules with respect to the effect of contributory negligence on the right to recover for personal injuries apply in actions for injuries alleged to have arisen from the negligence or malpractice of a physician." (70 C.J.S. Physicians and Surgeons § 51, p. 973), it is much more difficult to apply those rules in such cases than in the usual accident case. The reasons for this are obvious, chief among them being that in an accident case we deal ordinarily with what happened in the space of a few minutes and negligence and contributory negligence are determined on the basis of the actions within that brief time. As compared with the medical malpractice case, it is relatively easy in the usual accident case to ascertain and to set apart what happened before the accident, at the moment of the accident, and thereafter, and to distinguish between the accident and the results thereof. The contact between a physician and his patient, on the other hand, covers a much longer period of time and involves numerous and diverse actions, treatments, medications, instructions, and day-to-day fluctuations in the condition of the patient and the corresponding duties of the physician. Frequently the question of how long the relationship of doctor and patient continued becomes very important. The ministrations of the physician are usually a continuing process and, when it is, the evaluation of his negligence may have to be made on the basis of his overall performance during the period of that relationship rather than on what *122 happened at any particular instant within that period. By the same token, whether what the patient did or failed to do in response to his doctor's instructions constituted contributory negligence must frequently be determined not on the basis of any particular incident, but on the basis of all that happened during the period of that relationship. Therefore, the general rules relating to contributory negligence must be sharpened considerably when applied to medical malpractice cases and care must be taken to tailor the charge to the jury in such cases to fit the facts of the particular case. Cf. Kreis v. Owens, 38 N.J. Super. 148, 155 (App. Div. 1955); Brumberger v. Burke, 56 F.2d 54, 56 (3 Cir. 1932).
We have found no reported New Jersey case dealing with contributory negligence in medical malpractice cases. Some of the cases in other jurisdictions contain language broader than needed to decide the facts therein involved. This imprecision has put the law on this subject in some "confusion * * * due largely to the inherent differences in facts and conditions in different cases. * * *" 17 L.R.A., N.S., 1242.
The note in 17 L.R.A., N.S., 1242 classifies the cases and says that where the patient's negligence is one of the causes which proximately contributes to the occurrence of the injury occasioned by the malpractice of the physician and does not affect merely its extent the negligence of the patient himself, though slight as compared with that of the physician, will preclude a recovery altogether and not merely mitigate the damages. Examples of this type of case are Stacy v. Williams, 253 Ky. 353, 69 S.W.2d 697 (Ct. App. 1934); Swanson v. French, 92 Iowa 695, 61 N.W. 407 (Sup. Ct. 1894); Richards v. Willard, 176 Pa. 181, 35 A. 114 (Sup. Ct. 1896). See also cases collected in 50 A.L.R.2d 1044, at pages 1046, 1052.
The note in 17 L.R.A., N.S., continues (at page 1243):
"It may appear  and this is probably generally the case  that there was a breach of duty on the part of the physician or surgeon which, even in the absence of negligence on the part of the patient *123 * * * would have caused some injury; but that the injury was aggravated by that of the patient. * * * Here the analogy is to those cases where an accident resulting in an injury was caused solely by the negligence of the defendant, but the injury was subsequently aggravated by the plaintiff's own negligence; * * * that the latter's negligence should not bar a recovery altogether, but merely mitigate the damages so that the physician or surgeon would be held only for such injuries as resulted from his own breach of duty, and relieved from liability for such of the injuries as resulted from the negligence chargeable to the patient himself."
Examples of this type of case are: Sauers v. Smits, 49 Wash. 557, 95 P. 1097, 17 L.R.A., N.S., 1242 (Sup. Ct. 1907); Wilmot v. Howard, 39 Vt. 447, 94 Am. Dec. 338 (Sup. Ct. 1867); DuBois v. Decker, 130 N.Y. 325, 29 N.E. 313, 314, 14 L.R.A. 429 (Ct. App. 1891); Carpenter v. Blake, 75 N.Y. 12, 24 (Ct. App. 1878); Schultz v. Tasche, 166 Wis. 561, 165 N.W. 292 (Sup. Ct. 1917). See also the cases collected in 50 A.L.R.2d, supra, at pages 1049, 1055.
In its charge on contributory negligence, the trial court did not tell the jury that such negligence must be a proximate cause of the injury. The failure to do so with an adequate definition of proximate cause is prejudicial error. Maccia v. Tynes, 39 N.J. Super. 1, 6 (App. Div. 1956); Kreis v. Owens, supra. Cf. Snyder v. Bicking, 115 N.J.L. 549, 550, 551 (E. & A. 1935). Instead, the trial court told the jury that the evidence (and it was the only evidence) presented by defendant to support the defense of contributory negligence was plaintiff's failure to continue the exercises at home after September 25, 1950, and that upon that evidence the jury could find for the defendant. In effect, the trial court thus ruled that as a matter of law, if the jury found that the elements of contributory negligence (other than proximate cause) existed in this case, the failure to continue the exercises met the legal standard of a proximate contributing cause of the injury.
Under the evidence in this case this was error. If the defendant was negligent in the respects charged by plaintiff, plaintiff's failure to exercise "was subsequent to the fault of the physician and merely aggravated the injury inflicted *124 by the physician" and therefore it affected only "the amount of the damages recoverable by the patient." 41 Am. Jur., Physicians & Surgeons, sec. 80, p. 199. Indeed, the trial court itself seemed to so feel, for he said to the jury, "I suggest to you that the failure to follow Dr. Stearns' instructions * * * goes perhaps not to the question of contributory negligence of this child but goes rather to the question of whether or not or the extent to which her failure to follow those instructions may have resulted in a greater disability than she would have if she had followed those instructions * * *." Later he said "I * * * suggest again that perhaps her failure to carry out instructions may go, rather than to her negligence, but to whether or not it aggravated or whether she felt she should take reasonable steps to minimize the injury * * *." However this, at best, was a mere suggestion, and did not neutralize the positive direction that the jury should find for the defendant if it found contributory negligence.
Of course, there are cases in which it must be left to the jury to determine whether the plaintiff's actions did constitute contributory negligence and thus an absolute defense, or whether they went only to the question of damages, but in such cases it is the obligation of the court to instruct the jury clearly in the rules of law by which the evidence is to be examined and upon which the jury is to determine whether it is one or the other. In such a case the jury is especially in need of clear and firm guidance, Kreis v. Owens, supra. Cf. Grammas v. Colasurdo, 48 N.J. Super. 543, 552 (App. Div. 1958); Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 565 (App. Div. 1951).
In the case at bar, though the evidence did not justify the submission of the issue of contributory negligence to the jury at all, had the charge thereon been a full and complete one, plaintiff might not now have been able to challenge it on this appeal, except as "plain error," because plaintiff herself had helped procure the giving of a charge on contributory negligence. Instead of pointing out to the court *125 why in this case no charge on contributory negligence should be given, plaintiff requested the following charges:
"12. In considering the question of contributory negligence, you may take into consideration the relationship between the respective parties, being that of physician and patient * * *
"13. Contributory negligence is never presumed, and the burden of proving contributory negligence devolves upon the party who alleges it."
The defendant had submitted to the court this request to charge (emphasis ours):
"15. A plaintiff is not entitled to recover regardless of the negligence of a defendant if the plaintiffs own negligence contributed to the occurrence of the injury or damage in the slightest degree, but in such a manner that without such contributory negligence the injury or damage would not have occurred."
With the requests of both counsel that a charge on contributory negligence be given before it, the court gave one, not in the language of the requests but in the words quoted above.
However, defendant's request No. 15 did ask (albeit inaccurately, since it related contributory negligence to injury or damage) that the jury be told that proximate cause is an essential element of the defense of contributory negligence, so counsel had a right to assume proximate cause would be charged. As we have noted, the trial court not only failed to do that but submitted to the jury the failure to exercise as proximate cause. After the charge was completed plaintiff's attorney objected, saying:
"I note the following exceptions to the Court's charge: * * *
Next, your Honor's comment about the aggravation of the injury in this case and the original contributory negligence of the infant plaintiff in that she did not hold the iron as Dr. Stearns recommended. * * *
* * * In other words, the proximate cause of the permanent disability being not the failure to hold the iron but development of the infection."
R.R. 4:52-1 requires counsel to state "distinctly the matter to which he objects and the grounds of the objection." *126 Plaintiff's objection barely satisfies the rule. Cf. Jelinek v. Sotak, 9 N.J. 19, 26 (1952); Marzotto v. Gay Garment Co., 11 N.J. Super. 368 (App. Div. 1951), affirmed 7 N.J. 116 (1951); Wilcox v. Christian and Missionary Alliance, 124 N.J.L. 527 (E. & A. 1940); 5 Moore's Federal Practice, par. 51.04.
Although the jury had sufficient evidence upon which to find that the defendant was not guilty of negligence, we have no way to determine whether the jury found for the defendant upon that ground or upon the ground of contributory negligence. Hence the judgment must be reversed and a new trial ordered.
This makes it unnecessary to discuss any other of appellant's grounds of appeal, except one. Appellant complains about certain comments made by defendant's counsel in his summation, relating to defendant's service to humanity as a missionary and otherwise, and to his reputation and to the effect of an adverse verdict thereon. Since no objection was made to these remarks and the judgment is being reversed for the reasons stated, it is not necessary to determine whether they constituted "plain error." However, they should not be repeated in the new trial. Dudek v. Janesko, 118 N.J.L. 420 (Sup. Ct. 1937), affirmed 120 N.J.L. 214 (E. & A. 1938); Stauf v. Holden, 94 So.2d 361 (Fla. Sup. Ct. 1957). Cf. Haid v. Loderstedt, 45 N.J. Super. 547 (App. Div. 1957); Botta v. Brunner, 26 N.J. 82 (1958).
Reversed. No costs.