## Onichimowski v. Perlstein

*William C. Hewson,* for plaintiff.
*Dolores B. Sesso,* for defendant.

McGLYNN, J., July 30, 1971.—This is a trespass action brought by Josephine Onichimowski and her husband against Dr. Samuel Perlstein, a dermatologist. The action sought damages for personal injuries, specifically scarring, sustained by Mrs. Onichimowski following minor surgery performed by Dr. Perlstein.

The complaint in trespass charged Dr. Perlstein with negligence in his performance of minor surgery and in operating without the patient's informed consent. However, during the course of the trial, the negligence charge was dropped, and the only theory of liability that went to the jury was that of unnecessary and unauthorized surgery, i.e., intentional assault and battery. After three hours of deliberation, the jury returned a verdict in favor of defendant. Thereafter, plaintiffs filed a motion for a new trial which was denied by the court en banc.

Succinctly stated the case involved the removal of lesions by the doctordefendant from the chest and chin of wifeplaintiff. The wifeplaintiff said there were no such lesions and the doctordefendant said there were. This, of course, was purely and simply a fact

question which was resolved by the jury in favor of defendant.

The first point argued by plaintiffs in their motion for a new trial is that the verdict was against the weight of the evidence because photographs taken of Mrs. Onichimowski by a professional photographer prior to her visit to defendant showed that she did not have moles on her chin and chest. This assertion is completely refuted by the record where the photographer, after examining the negatives, conceded the existence of skin blemishes in the area involved. In any event, what the pictures showed and the weight to be given them as well as the credibility of the photographer were matters clearly within the province of the jury particularly in light of the positive assertion by defendant that the moles and lesions did in fact exist at the time of the operation. It is plaintiffs' position that the pictures were conclusive evidence that no moles existed. They cite several cases in support of this. However, all of the cases cited say no more than that if pictures are properly authenticated, they are admissible evidence of what they represent. What they show, however, is a question for the jury.

The second issue raised by plaintiffs concerns the court's refusal to strike testimony of wifeplaintiff concerning her knowledge of her sister's prior experience with defendant.

On cross-examination Mrs. Onichimowski testified that the same thing happened to her sister about a week before; that is, Dr. Perlstein performed operative procedures to remove lesions where none in fact existed. The court questioned her to determine whether she was aware of her sister's prior experience at the time she first went to the defendant's office. This line of inquiry was proper in light of the witness's testimony that she went to defendant's office at the

suggestion of her sister and with her sister. If she was aware of her sister's experience it is not likely that she would subject herself to the machinations of the same physician. On the other hand, if she was not aware of her sister's experience that would explain her conduct in going to Dr. Perlstein for the same treatment. But whether the wifeplaintiff had knowledge of this incident or not, it is difficult to reconcile her testimony of her sister's experience with her testimony that her sister took her to Dr. Perlstein. While this line of questioning may have been prejudicial in the sense that it may have raised some doubts as to the witness's veracity, it was for that very reason relevant and proper.

Plaintiffs' third point challenges a part of the jury charge which was made in the following context:

"There is one factor here which both sides agree on, and that is that Mrs. Onichimowski's sister was present. Mrs. Onichimowski said her sister was standing in the doorway when this procedure was taking place, and that Dr. Perlstein said that Mrs. Onichimowski's sister was there, and in fact she was talking to her sister. And I think he said: trying to give her solace at the time.

"That brings up another point of law which I must instruct you on, and that is that where there is a person subject to the control of parties, who was a witness in a case and is not produced by that party, then you may infer that that person or that witness's testimony would be adverse to the party who has the connection. In this case specifically I think the sister's name was Mrs. Goodenough who was mentioned. And Mrs. Onichimowski didn't produce Mrs. Goodenough, and you may therefore infer that her testimony would not, or I wouldn't say would not, but would be adverse to Mrs. Onichimowski's testimony. That doesn't mean

you must conclude that her testimony would be adverse, but you may conclude her testimony is adverse to Mrs. Onichimowski's testimony."

Specifically, plaintiffs contend that defendant could have subpoenaed Mrs. Goodenough and, therefore, she was "equally available" to both sides.

It is a settled rule in this Commonwealth that "where evidence which would properly be a part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him": Haas v. Kasnot, 371 Pa. 580, 584-85 (1952), Ferne v. Chadderton, 363 Pa. 191, 198 (1949). This rule is particularly important as it relates to the party having the burden of proof: Hertz Corporation v. Hardy, 197 Pa. Superior Ct. 466 (1962).

Wife plaintiff testified that her sister went with her to the doctor's office and witnessed the assault and battery committed by the doctor and yet, without any explanation, the sister was not produced. It is difficult to conceive of a more friendly and cooperative eye-witness than a sister who is alleged to have undergone a similar ordeal at the hands of the same defendant. This litigation presented a clear cut issue of credibility, and it certainly would have been in Mrs. Onichi-mowski's interest to produce an eye-witness who could corroborate her version of the facts. Her failure to do so presents an appropriate case for the application for the above stated rule.

The fact that the witness could have been subpoened by defendant is irrelevant. If availability to a subpoena was the test then the rule would be a nullity.

The final issue concerns the refusal of the court to instruct the jury as follows:

"13. Members of the jury, you are to completely

dismiss from your mind with regard to this case any thoughts concerning the defendant's medical practice. His professional reputation is not in issue here, nor has it been, nor can he be charged with anything other than his civil liability with regard to this case. This is only, and no more than, a civil action for damages and the only consideration you will give to it are the damages which Mrs. Onichimowski has sustained, and whether or not the defendant is responsible therefor. The defendant's career or reputation is not going to be affected by this trial, nor is his right to engage in the practice of medicine, and any consideration of what effect this verdict may have on the doctor's reputation would be unfair to the plaintiff, and would be legally improper. *Stauf v. Holden,* 94 So.2nd 361, 74 A.L.R.2d 658 (1957); *Weinstein v. Prostkoff,* 191 N.Y.S. 2d 310 (1959); *Flynn v. Stearns,* 52 N.J.Super. 115, 145 A.2d 33 (1958)."

The thrust of the cases cited by plaintiffs, which are collected at 74 ALR 2d 662, is that it is improper to direct the jury's attention to the effect a verdict against a defendant might have on his professional reputation or standing. The obvious purpose of such a rule is to prevent the jury from being diverted from the principal issues in the litigation by injecting into the case an emotional issue which is essentially irrelevant.

The cases where such a charge has been upheld are those in which it was necessary to neutralize action by trial counsel who appealed to the jury for vindication of a professional client on the basis of the potential injury to the client's reputation. No such argument was made in the case at bar nor is such an appeal suggested anywhere in the evidence. Therefore, in the context of this case it would have been improper to charge as requested for it would serve only to bring this

factor to the jury's attention, a result which the law seeks to avoid.

But even assuming it would have been proper, upon request, to instruct the jury that they should not consider what effect the verdict would have on the professional standing and reputation of defendant, the point as submitted by plaintiffs required the court to affirmatively state as a fact: "The defendant's career or reputation *is not going to be affected* by this trial nor is his right to engage in the practice of medicine . . ." Such an instruction would have been just as improper as a statement that defendant's reputation *will be affected* by the verdict. Therefore, the point as framed was incorrectly stated and for this additional reason was properly refused.