NEWMAN, Associate Judge:
 

 This appeal arises from rulings made by the trial court in a medical malpractice action where the jury verdict was for the defendant, Dr. Schneider. Mrs. Stager contends that Judge Goodrich erred in three separate areas: (1) by submitting an issue of contributory negligence to the jury; (2) in his rulings denying her requests for instructions: (a) that a physician has a duty to inform a patient of test results, and (b) one on calculus of risks; (3) by giving two instructions to which she objected: (a) that expert testimony was needed to establish each element of her claim, and (b) a missing witness instruction; and (4) in evidentiary rulings including: (a)
 
 *1294
 
 prohibiting her experts from testifying as to the adequacy of certain hospital policies, and (b) that if Stager put on a witness competent to testify about the adequacy of those policies, Dr. Schneider would be permitted to show that she had settled her claim against the hospital. Mr. Stager claims that Judge Mencher erred in ruling that he had no claim for loss of consortium since he was not married to Mrs. Stager until approximately three months after the alleged negligent conduct of Dr. Schneider.
 

 We hold that the trial judge erred in submitting contributory negligence to the jury as well as in other rulings, requiring that we reverse the jury verdict as to Mrs. Stager. We hold that under the facts presented in this case, the motions judge erred in ruling that Mr. Stager could not properly assert a claim for loss of consortium. We remand for a new trial.
 

 I
 

 Facts
 

 Mrs. Stager and her husband sued Dr. Schneider, alleging that he negligently failed to inform her (or her attending physician) of a spot or shadow he saw on x-rays taken of her lung. The x-rays were taken at Capitol Hill Hospital (C.H.H.) as part of an examination prior to an out-patient operation to be performed by Dr. Wein. Mr. Stager claimed loss of consortium.
 
 [1]
 

 The underlying facts in this case are basically- undisputed. They were stated by the trial judge as follows:
 

 Prior to March 3, 1980, plaintiff consulted with Dr. Arthur B. Wein, an orthopedic surgeon, regarding bilateral foot problems. As a result of Dr. Wein’s examination of her feet, Dr. Wein and plaintiff agreed that he would perform surgery on her feet, one foot at a time, to be scheduled on different dates at the Ambulatory Surgery Unit at Capitol Hill Hospital. It was plaintiff’s specific request that the surgery be performed at an ambulatory surgical unit. The surgery was subsequently scheduled for March 4, 1980. At some time prior to March 3, 1980, Dr. Wein (or someone acting on his behalf) telephoned Capitol Hill Hospital and arranged for the standard pre-operative testing to be done upon Mrs. Stager at the hospital. That testing was to include a chest x-ray. It is undisputed that the sole purpose, insofar as the Hospital was aware, for the x-rays and other testing was in preparation for the contemplated surgery. On or about March 3, 1980, Mrs. Stager visited the Hospital and the ordered pre-op-erative diagnostic testing was completed, including the chest x-ray. The chest x-ray was read and interpreted, in the normal course of business, by defendant Hans H. Schneider, M.D. In Dr. Schneider’s report of the x-ray he noted an area of slightly increased density in the apex of the right lung. He stated that this could represent an area of localized infiltration, and recommended comparison with previous films or follow-up films. On the morning of March 4,1980, plaintiff cancelled the planned surgery due to illness. Plaintiff was not subsequently operated on by Dr. Wein, and she never returned to Capitol Hill Hospital. Neither plaintiff nor Dr. Wein was made aware of Dr. Schneider’s findings in the x-ray report. In December of 1980, plaintiff underwent a routine chest x-ray at the request of her family physician at which time an abnormality was disclosed and the plaintiff diagnosed as having a malignant tumor on her right lung. In February, 1981, she underwent surgery for removal of the tumor at George Washington University Hospital.
 

 Order, May 22, 1984, at 1-2.
 
 [2]
 

 
 *1295
 
 II
 

 Contributory
 
 Negligence
 
 [3]
 

 Mrs. Stager’s mother died of lym-phosarcoma in 1945, and her half-sister died of lung cancer in 1972. Mrs. Stager, as a result, had a heightened sensitivity to cancer risk which caused her to get annual chest x-rays for ten years prior to 1980. She was always informed of the results of these x-rays; they had all been negative. Neither Mrs. Stager nor Dr. Wein was informed by Dr. Schneider of the results of the x-ray done on March 3,1980; neither of them contacted Dr. Schneider seeking to obtain the results. Dr. Schneider contends these facts present a jury issue of whether Mrs. Stager had a duty to call and obtain the x-ray result and if so, a jury could then find her failure to do so contributory negligence, barring her claim. Mrs. Stager contends that as a matter of law, her failure to seek the x-ray results from Dr. Schneider was not contributory negligence, relying oh
 
 Morrison v. MacNamara,
 
 407 A.2d 555 (D.C.1979), and other cases.
 

 Contributory negligence is the failure to act with the prudence demanded of an ordinary reasonable person under like circumstances.
 
 Byas v. Dorsey,
 
 89 U.S. App.D.C. 403, 192 F.2d 613 (1951); Restatement (Second) of Torts § 464 (1977). Put another way, “[t]he plaintiff is required to conform to the same objective standard of conduct, that of the reasonable person of ordinary prudence under like circumstances” (footnote omitted). W. Prosser & W. Keeton, The Law of Torts § 65 at 453 (5th ed. 1984). Thus, the standard is an
 
 objective
 
 one. The doctrine of contributory negligence “[i]n its essence, ... is an expression of the highly individualistic attitude of the common law, and its policy of making the personal interests of each party depend upon his own care and prudence.”
 
 Id.
 
 at 452, 192 F.2d 613. A reasonable person need not go through life timidly, seeking to guard against that which is only remotely probable and not to be feared except by the overly cautious.
 

 “As a general proposition, a plaintiff is not bound to anticipate negligent conduct on the part of others. Rather, he may assume that others will fulfill their duties.” J. Dooley, Modern Tort Law § 4.18 at 115 & n. 1 (1982);
 
 see Morrison v. MacNamara,
 
 407 A.2d 555, 565-68 (D.C.1979). “Ordinarily, a patient can rely on a doctor’s informing her if the results of a test are positive.”
 
 Ray v. Wagner,
 
 286 Minn. 354, 176 N.W.2d 101, 104 (1970).
 
 See United States v. Reid,
 
 251 F.2d 691 (5th Cir.1958);
 
 Union Carbide & Carbon Corporation v. Stapleton,
 
 237 F.2d 229, 232-33 (6th Cir.1956);
 
 James v. United States,
 
 483 F.Supp. 581 (N.D.Cal.1980);
 
 Betesh v. United States,
 
 400 F.Supp. 238 (D.D.C.1974);
 
 Dornak v. Lafayette General Hospital,
 
 399 So.2d 168 (La.1981);
 
 see generally Morrison v. MacNamara, supra;
 
 Annot., 100 A.L.R.3d 723 (1980); Annot., 49 A.L.R.3d 501 (1973); Annot., 50 A.L.R.2d 1043 (1956); Note, 21 Clev.St.L.Rev. 58 (1972).
 

 Although at times the doctrines overlap, [a] clear distinction should be made between the doctrine of contributory negligence which operates as a defense when a party knows or by the exercise of ordinary care
 
 should have known
 
 a particular fact or circumstance, and assumption of risk, which operates only when the party actually knows the full scope and magnitude of the danger and thereafter voluntarily exposes himself to it.
 

 Sierra Pacific Power Co. v. Anderson,
 
 77 Nev. 68, 358 P.2d 892, 894 (1961) (original emphasis). It is in areas such as are at issue here that the principles of the two doctrines overlap.
 
 Morrison v. MacNamara, supra,
 
 407 A.2d at 568 n. 11.
 

 The trial judge sought to distinguish our holding in
 
 Morrison v. MacNamara, supra.
 
 In his post-trial Order denying Mrs. Stager’s motion for a new trial, the trial
 
 *1296
 
 judge relied on such cases as
 
 Skar v. City of Lincoln, Nebraska,
 
 599 F.2d 253 (8th Cir.1979);
 
 Somma v. United States,
 
 180 F.Supp. 519 (E.D.Pa.1960);
 
 Fall v. White,
 
 449 N.E.2d 628 (Ind.Ct.App.1983);
 
 Vergie M. Lapelosa, Inc. v. Cruze,
 
 44 Md.App. 202, 407 A.2d 786 (1980);
 
 Marlow v. Cerino,
 
 19 Md.App. 619, 313 A.2d 505 (1974);
 
 Ray v. Wagner, supra; Mecham v. McLeay,
 
 193 Neb. 457, 227 N.W.2d 829 (1975); and
 
 Flynn v. Stearns,
 
 52 N.J.Super. 115, 145 A.2d 33 (1958). The trial court’s reliance on these cases was misplaced.
 
 Skar, Somma,
 
 and
 
 Fall
 
 primarily deal with issues of contributory negligence based on a patient’s deliberate concealment or other
 
 wrongful
 
 failure to provide the physician relevant information.
 
 Fall, Mec-ham
 
 and
 
 Flynn
 
 deal with patients’ failure to follow instructions and/or failure to complete the prescribed course of treatment.
 

 Lapelosa
 
 and
 
 Marlow,
 
 both from the Maryland Court of Special Appeals, deal with patients’ delay in undergoing medical procedures when the delay rendered the procedures more risky. In
 
 Lapelosa,
 
 the court analyzed the issue as being one of contributory negligence. In
 
 Marlow,
 
 it analyzed the issue in the framework of primary negligence and proximate causation.
 

 In
 
 Ray v. Wagner,
 
 the patient had a pap smear taken in connection with obtaining a contraceptive device. The test showed possible malignancy. The doctor made a number of unsuccessful attempts to contact the patient to inform her of the test results. A jury could find that these attempts were unsuccessful because “plaintiff gave the doctor somewhat misleading information as to her status, she had no phone at the address where she lived, and did not live at the address where she had a phone.”
 
 Ray v. Wagner, supra,
 
 176 N.W.2d at 104.
 
 Ray v. Wagner
 
 is the only case which has been cited to us, or that we have found;
 
 see
 
 Annot., 49 A.L.R.3d 501, 514 § 7 (1973 and Supp.1984), dealing with contributory negligence of a patient with respect to communication of test results.
 
 [4]
 
 Whether one analyzes the facts within a contributory negligence framework, as the Minnesota court did, or in a primary negligence/proximate cause framework as the Maryland court did in
 
 Marlow v. Cerino, supra,
 
 we have no quarrel with the results. We agree that a patient cannot, by her conduct, make it virtually impossible for the doctor to communicate with her; yet charge the doctor with damages for his inability to communicate test results to her. Simply put, however, that is not this case.
 

 We agree with the trial judge (and those appellate courts which he cites) that a patient has a duty to cooperate with her doctor in proper diagnosis and treatment. It is a quantum leap, however, from that adage to permitting a duty to be placed on a patient in Mrs. Stager’s situation to call and inquire of test results under circumstances as are presented here. To do so would be, in reality, to invert the duty by transferring it from the health professional to the patient. We find nothing in law or logic justifying such a result.
 
 See Morrison v. MacNamara, supra,
 
 407 A.2d at 565-68.
 

 Ill
 

 Instructions
 

 Mrs. Stager asserts that the trial judge erred in refusing to give two instructions she requested and by giving two to which she objected. Only one of these— the missing witness instruction — requires extended discussion.
 
 [5]
 
 The legal standard
 
 *1297
 
 for giving a missing witness instruction has been stated as follows:
 

 [I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.
 

 Graves v. United States,
 
 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1898). To be peculiarly available, a witness: (1) must be within a party’s particular ability to locate and produce, and (2) must have such a legal or factual status with respect to the party as to make it natural to expect that party to have called the witness.
 
 Thomas v. United States,
 
 447 A.2d 52, 57 (D.C.1982). In order to meet the “elucidate the transaction” test, the testimony must be both material and relevant to a disputed issue,
 
 Dent v. United States,
 
 404 A.2d 165, 170 (D.C.1979); must be noncumulative,
 
 Cooper v. United States,
 
 415 A.2d 528, 534 (D.C.1980), and must constitute an important part of the case of the party against whom the inference is drawn.
 
 Dent v. United States, supra,
 
 404 A.2d at 170. When both prongs of the
 
 Graves
 
 test are met, the court must exercise discretion in making its decision whether to give a missing witness instruction or to permit a party to make a missing witness argument, being constantly mindful of the dangers inherent in creating evidence from nonevidence.
 
 Thomas v. United States, supra,
 
 447 A.2d at 58. The party seeking a missing witness instruction or intending to argue a missing witness inference is required to seek and obtain a prior ruling from the court; the court must state its finding which underpin its ruling.
 
 Id.
 
 As we have said previously, we have found that the missing witness inference is being permitted too frequently in the trial court.
 
 Miles v. United States,
 
 483 A.2d 649 (D.C.1984);
 
 Thomas v. United States, supra,
 
 447 A.2d at 60. To state it another way, it seldom will constitute error to deny the missing witness instruction or to prohibit argument of the missing witness inference.
 

 Ms. Flavia Giampietro, R.N. was listed as a witness by C.H.H. in their pretrial statement; she was the Assistant Administrator/Nursing. Her deposition had been taken. Dr. Schneider’s pretrial statement, in listing the witnesses he intended to call, incorporated by reference the witnesses listed in the pretrial statements of the other parties. Mrs. Stager had served a subpoena upon Giampietro to appear at trial. Giampietro was expected to testify concerning the import and impact of certain written policies and procedures of the hospital with respect to reporting test results, including x-rays. When Mrs. Stager sought to have her physician experts testify as to these policies, the court sustained Dr. Schneider’s objection on at least two and perhaps three grounds. The trial court first stated that the language of the written policies and procedures was plain and simple and needed no one other than the jury to construe their meaning. Second, to the extent that there was a dispute over which set policies and procedures
 
 (i.e.,
 
 those pertaining to the ambulatory surgical unit or those pertaining to outpatient treat
 
 *1298
 
 ment) was applicable to Mrs. Stager, only someone familiar with the application of these policies at C.H.H. could testify. Third, if testimony with respect to such policies (particularly in relationship with the policies of other hospitals) crossed certain lines, then Dr. Schneider could introduce into evidence the fact of the settlement between Mrs. Stager and C.H.H.
 
 [6]
 
 In addition both Dr. Schneider and Ms. Judy Burke, Assistant Director of Nursing at C.H.H. (who had participated in writing the ambulatory surgical policies and procedures in 1979) testified as to the meaning and import of the policies. Thus, Giampie-tro’s testimony likely would have been cumulative.
 

 It was error to give a missing witness instruction under these circumstances.
 
 [7]
 

 IV
 

 Evidentiary Rulings
 

 Mrs. Stager complains of two evidentiary rulings by the trial court. The first ruling prevented her from examining her experts on either the outpatient or the ambulatory surgical unit policies and procedures of C.H.H.
 
 See
 
 III,
 
 supra
 
 pg. 8. The second ruling was that if she called a witness competent to testify on these policies and procedures, Dr. Schneider would be permitted to introduce the fact of settlement by Mrs. Stager with C.H.H. into evidence.
 
 Id.
 

 Dr. Schneider was an independent contractor, vis a vis C.H.H. He asserted in his pretrial statement, his testimony at trial, and in his request for instruction that his conduct in distributing the x-ray report was in accordance with the applicable policies and procedures of C.H.H.,
 
 i.e.,
 
 that he satisfied the standard of due care by complying with the policies and procedures applicable to the ambulatory surgical unit. Those policies and procedures, he contended, did not require that he notify Mrs. Stager or her physician directly of the findings with respect to her lungs. Rather, routing the report to go with her chart at the ambulatory surgical unit constituted due care.
 

 Both of the experts called by Mrs. Stager testified that due care under the facts of this case required that Dr. Schneider notify Mrs. Stager and/or her physician directly of the finding with respect to her lungs. Given this testimony, we see little, if any, basis for preventing them from testifying that to the extent that Dr. Schneider contended the policies and procedures of C.H.H. required less, those policies and procedures did not comply with the standard of due care under the circumstances.
 
 [8]
 

 Given Dr. Schneider’s contention that his compliance with the applicable hospital policies and procedures satisfied the duty of due care, we likewise see no basis for the court’s ruling that if the plaintiff presented evidence of the inadequacy of those policies and procedures, either through witnesses called by her or by cross-examination of Dr. Schneider’s witnesses, the fact of the settlement with C.H.H. could be introduced as evidence. The trial court was apparently proceeding
 
 *1299
 
 on the thesis that to permit Mrs. Stager to probe in this area would risk Dr. Schneider, an independent contractor, being charged with the liability C.H.H. had settled. If this was the basis of the court’s ruling, it appears erroneous. As we have stated, where Dr. Schneider sets up these policies and procedures as establishing what constituted due care for him, there appears to be little, if any, basis for denying Mrs. Stager the right to probe with respect thereto.
 

 V
 

 Loss of Consortium
 

 The C.H.H. x-rays were taken on March 3, 1980. Mrs. Stager married Patrick H. Stager on June 2,1980. In December 1980, Mrs. Stager had her annual physical examination which included a chest x-ray. The results of this x-ray coupled with further test led to a diagnosis of adenocarcinoma. Surgery was performed removing the upper lobe of her right lung, two of her ribs, as well as surrounding nerve, muscle, and soft tissue. Her injury is permanent. Neither Mr. nor Mrs. Stager knew of the spot or shadow shown on the March 3, 1980 x-ray and report prior to December 1980.
 

 Mr. Stager contends that the tort of failure to disclose committed by Dr. Schneider was a continuing one. He says that within the meaning of the term in the law of the District of Columbia, his spouse’s injury did not occur (or her cause of action accrue) until December 1980,
 
 i.e.,
 
 when the spot shown on the December 1980 x-ray was compared with that on the March x-ray.
 
 See Burns v. Bell,
 
 409 A.2d 614 (D.C.1979).
 
 See generally Ehrenhaft v. Malcolm Price, Inc.,
 
 483 A.2d 1192, 1199-1204 (D.C.1984). He concludes that since he was lawfully married to Mrs. Stager when her cause of action accrued, he has a justiciable claim for loss of consortium.
 

 This is the first time this court had been called upon to determine whether a spouse has a claim for consortium under these circumstances. The parties do not cite to us any decision dealing with this phase of the law of consortium; our independent research has found none. We thus start our analysis with those cases dealing with the general issue of consortium in situations where marriage occurred after the cause of action accrued.
 

 With the exception of two reported cases, the courts of this country have unanimously held that the existence of a lawful marital relationship at the time of the tor-tious conduct toward and resultant injury to one spouse is required before the other spouse can bring an action for loss of consortium.
 
 [9]
 

 See Sawyer v. Bailey,
 
 413 A.2d 165 (Me.1980);
 
 Tremblay v. Carter,
 
 390 So.2d 816 (Fla.Dist.Ct.App.1980);
 
 Angelet v. Shivar,
 
 602 S.W.2d 185 (Ky.Ct.App.1980); W. Prosser & W. Keeton, The Law of Torts,
 
 supra
 
 § 125 at 932.
 
 [10]
 
 The rationale for this rule of law has been variously stated: a person should not be permitted to marry a cause of action,
 
 Wagner v. International Harvester Company,
 
 455 F.Supp. 168 (D.Minn.1978);
 
 Sartori v. Gradison Auto Bus Co., supra;
 
 one takes a spouse in the then existing state of health and thus assumes the risk of any deprivation resulting from prior disability,
 
 Rademacher v. Torbensen,
 
 257 A.D. 91, 13 N.Y.S.2d 124 (1939); on social policy grounds, liabili
 
 *1300
 
 ty at some point must be delimited,
 
 Tong v. Jocson,
 
 76 Cal.App.3d 603, 142 Cal.Rptr. 726 (1977). We have no hesitance in expressing our agreement with these courts where the issue is the right to claim consortium where the tortious conduct
 
 and fact of injury
 
 were both known or knowable prior to marriage. That, however, is not this case.
 

 Under District of Columbia law, Mrs. Stager’s cause of action for medical malpractice did not accrue until, at the earliest, December 1980 for it was only then that she knew or by the exercise of due diligence should have known of the injury.
 
 Burns v. Bell, supra,
 
 409 A.2d at 617;
 
 see generally Ehrenhaft v. Malcolm Price, Inc., supra.
 
 We recognize that our discovery rule has been fashioned by construing the words “accrued” or “accrual” contained in our Statutes of Limitation,
 
 see, e.g.,
 
 483 A.2d at 1198-99, construing D.C. Code § 12-301 (3 & 7) (1981), and
 
 Burns v. Bell, supra,
 
 409 A.2d at 615, construing D.C.Code § 12-301(8) (1973). However, we believe the rationale of those decisions (and those of other jurisdictions adopting the discovery rule) to be relevant to our decision here. We have stated that the discovery rule “emerged to redress situations in which the fact of injury was not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred.”
 
 Ehrenhaft v. Malcolm Price, Inc., supra,
 
 483 A.2d at 1201. A spouse’s claim for loss of consortium generally could not accrue until the other spouse’s cause of action for negligence accrued.
 
 [11]
 
 We see no reasons of sufficient merit which counsel against viewing the marital status at the time the cause of action accrues as being the relevant time. Unlike those cases such as
 
 Sawyer v. Bailey, supra,
 
 where the wrongful conduct as well as the fact of injury was known prior to marriage, here, neither the wrongful conduct nor the fact of injury was known prior to marriage. Here, one cannot say that Mr. Stager was marrying a lawsuit.
 
 Cf. Wagner v. International Harvester Co., supra; Sartori v. Gradison Auto Bus Co., supra.
 
 Nor do we see any reasons in social policy to delimit liability otherwise.
 
 Cf. Tong v. Jocson, supra.
 
 We recognize the tortured history of the evolution’of the claim for loss of consortium.
 
 See Hitaffer v. Argonne Co.,
 
 87 U.S.App.D.C. 57, 183 F.2d 811,
 
 cert. denied,
 
 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950).
 
 See also
 
 n. 10
 
 supra.
 
 However, like the Supreme Judicial Court of Maine,
 
 see Sawyer v. Bailey, supra,
 
 413 A.2d at 165, we recognize that the common law is an evolving body of law and that we have the right, consistent with sound policy, to fashion a remedy for an existing wrong. We are of the view that the ratio decidendi of eases holding that where the tortious conduct and the fact of injury were known or knowable prior to the marriage, there is no claim for loss of consortium are not persuasive where, as here, the discovery rule controls Mrs. Stager’s cause of action for negligence. Mr. Stager has a justicia-ble claim for relief.
 

 Reversed and remanded for further proceedings consistent with this opinion.
 

 [2]
 

 . Other evidence will be set forth,
 
 infra,
 
 where relevant to a particular issue.
 

 [3]
 

 . The parties agree that the issue of Dr. Schneider’s negligence was properly a jury question. Since there was a general verdict by the jury, and we conclude that there was no contributory negligence to submit to the jury, reversal is proper.
 
 See Lewis v. WMATA,
 
 463 A.2d 666, 673 (D.C.1983).
 

 [4]
 

 . Arguably,
 
 Somma v. United States, supra,
 
 is another insofar as it discusses the plaintiffs failure to list the name and address of his attending physician on the x-ray form in spite of having been instructed to do so.
 

 [5]
 

 . We find no error in the court's refusal to give the instruction on a physician’s duty of care relating to informing a patient of test results requested by Mrs. Stager. The expert testimony was in dispute on whether the radiologist was required by due care to notify the patient or attending physician directly of adverse test results as opposed to using hospital channels for that purpose. The instruction propounded by
 
 *1297
 
 Mrs. Stager reflected her view of the duty — direct communication. The court properly instructed the jury as to its role in determining what due care required under the circumstances. Likewise, the court did not err in rejecting Mrs. Stager’s so-called "calculus of the risk” instruction which would have permitted liability absent proof of a standard of care if the action required is minimal when compared to the risk.
 

 Likewise,
 
 on the facts of this case
 
 we find that the court did not err in instructing the jury that expert testimony was necessary to prove each element of Mrs. Stager's claim. Cases such as
 
 Washington Hospital Center v. Martin,
 
 454 A.2d 306 (D.C.1982), and
 
 Washington Hospital Center v. Butler,
 
 127 U.S.App.D.C. 379, 384 F.2d 331 (1967), on which Mrs. Stager relies, and similar cases, are factually inapposite. We do note with concern a portion of the instruction which is capable of meaning that the jury can only credit those experts who have "similar attributes and skills as those possessed by Dr. Schneider.” The court, in the event of retrial, should avoid any such implications. (The trial court had permitted the testimony of plaintiffs experts, cardiovascular and thoracic surgeons, on the duty of a radiologist to inform the patient of adverse test results.)
 

 [6]
 

 . These limits were apparently the result of the trial judge’s ruling on a motion for summary judgment. The transcript of that hearing and ruling are not part of the record on appeal. However, the court and counsel make reference thereto at a bench conference during the cross-examination of Dr. Wener, an expert radiologist called by Dr. Schneider. From the colloquy at the bench, we cannot be sure of what boundaries were drawn.
 
 See also
 
 IV,
 
 infra.
 

 [7]
 

 . We note that had the trial court complied with the procedural strictures of
 
 Thomas v. United States, supra,
 
 it likely would have avoided the error by denying the instruction.
 

 [8]
 

 .Likewise, to the extent that Dr. Schneider’s expert, Dr. Wener, testified that the policies and procedures of C.H.H. established the standard of due care under the circumstances, query whether it was proper to prevent Mrs. Stager from testing his credibility on this score by asking him what the policies and procedures of the hospital with which he was affiliated (Greater Southeast Community Hospital), or of other hospitals with which he was familiar, would have required under the circumstances.
 

 [9]
 

 .
 
 The exceptions are
 
 Bulloch v. United States,
 
 487 F.Supp. 1078 (D.N.J.1980) (construing N.J. law) and
 
 Sutherland v. Auch Inter-Borough Transit Co.,
 
 366 F.Supp. 127 (E.D.Pa.1973) (construing Pa. law). The
 
 Bulloch
 
 holding has been specifically rejected twice by the Superior Court of New Jersey, Appellate Division.
 
 Leonardis
 
 v.
 
 Morton Chemical Co.,
 
 184 N.J.Super. 10, 445 A.2d 45 (1982);
 
 Childers v. Shannon,
 
 183 N.J.Super. 591, 444 A.2d 1141 (1982). Both before and after
 
 Sutherland,
 
 Pennsylvania has rejected its rationale.
 
 See Sartori v. Gradison Auto Bus Co., Inc.,
 
 42 Pa.D. & C.2d 781 (1967), and
 
 Rockwell v. Liston,
 
 71 Pa.D. & C.2d 756 (1975).
 

 [10]
 

 . For a history of the evolution of loss of consortium as a cause of action,
 
 see
 
 W. Prosser & W. Keeton, The Law of Torts,
 
 supra
 
 § 125 at 931-34.
 

 [11]
 

 . Indeed the same period of limitations has been held applicable.
 
 See Olsen v. Bell Telephone Laboratories, Inc.,
 
 388 Mass. 171, 445 N.E.2d 609 (1983);
 
 Titze v. Miller,
 
 337 N.W.2d 176 (S.D.1983).