James R. WIGGINS, et ux., Plaintiffs,

v.

EQUIFAX SERVICES, INC.,
et al., Defendants.

Civ. A. No. 90–0199 (RCL).

United States District Court,
District of Columbia.

Oct. 21, 1993.

Michael Vincent Statham, Joseph, Greenwald & Laake, P.A., Greenbelt, MD, for Equifax Services.

John C. LaPrade, Washington, DC, for James Russell Wiggins.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on defendants' motions for summary judgment and plaintiffs' cross-motions for partial summary judgment. For the reasons that follow, defendant ESI's motion will be granted in part and denied in part, defendant Madden's motion will be granted, and plaintiffs' motions for partial summary judgment will be denied.

## I. INTRODUCTION

This is an action by James Russell Wiggins and Karen Wiggins against Equifax Services, Inc. ("ESI"), a consumer reporting agency, and one of its employees, D. Jaye Madden. Plaintiffs allege that defendants disseminated a report to Mr. Wiggins' then-employer, District Cablevision, Inc. ("DCI"), falsely stating that Mr. Wiggins had a felony conviction for possession of cocaine in the District of Columbia in 1989.

The First Amended Complaint ("Complaint") is in nine counts. In Counts One through Four and Count Six, Mr. Wiggins asserts willful violations of the Fair Credit Reporting Act ("FCRA" or "the Act"), 15 U.S.C. §§ 1681–1681t. In Count Five Mr. Wiggins alleges a common-law claim of defamation. In Count Seven both plaintiffs assert a federal civil rights violation under 42 U.S.C. §§ 1981 and 1983. In Count Eight plaintiff Mrs. Wiggins asserts common-law claims of "loss of consortium, emotional distress and personal injury." Finally, in Count Nine both plaintiffs bring a claim for treble damages, interest, and attorneys' fees under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. Both defendants have moved for summary judgment on a variety of grounds with respect to all of the claims asserted against them. In addition, plaintiffs have moved for partial summary judgment with respect to three of the claims under the FCRA.

## II. FACTS

In this case, lengthy and contentious discovery has resulted in a confused and diffuse record in which many key factual issues appear to be unresolved, making evaluation of the summary judgment motions exceedingly difficult. However, there is a core of facts which is not or cannot reasonably be disputed, and it is that core that will be set out here and that will form the basis for the Court's opinion.

On January 2, 1990, the Cleveland Equicenter of ESI (the "Equicenter") was contacted by DCI and was requested to perform a criminal records check on Mr. Wiggins, who was an employee or potential employee of DCI. DCI provided the Equicenter with Mr. Wiggins' first and last names, middle initial,[1] social security number, address, and date of birth.

On January 3, the Equicenter contacted the ESI regional office in McLean, Virginia and requested that the regional office perform the records check on Mr. Wiggins. The task was assigned to ESI part-time field officer Tami Plumer. Ms. Plumer, working out of her home, contacted a clerk at the Superior Court for the District of Columbia by telephone, and asked the clerk to search Superior Court records to determine whether James R. Wiggins had a criminal record. The clerk checked those records and informed Ms. Plumer that James R. Wiggins had a March 1989 drug conviction.[2] Ms.

---

**1.** At certain points in their memoranda, plaintiffs appear to contend that DCI provided ESI with plaintiff's full middle name, rather than merely his middle initial. In support of this argument, they point to the fact that plaintiff's middle name, "Russell," is handwritten onto the document on which ESI recorded the information initially communicated to it by DCI. All of the other information on this document, however, including the "R" in "Russell," is typewritten. Deposition testimony in the case supports the fact that only the middle initial was provided initially, and that the word "Russell" was hand-

written onto the document at a later time. The Court concludes that there is not a genuine dispute of fact with respect to this issue; no reasonable jury could find, based on the evidence presently before the Court, that ESI was given Mr. Wiggins' full middle name on January 2. This fact, however, is not dispositive of any of the issues raised in the summary judgment motions and decided in this Opinion.

**2.** Defendants assert that Ms. Plumer was told that James R. Wiggins had a felony drug conviction for possession of cocaine. Plaintiffs argue

Plumer reported this information to the regional office, and on January 5, the regional office forwarded the information to the Equicenter. The Equicenter gave "clearance" of this information, by telephone, to DCI on or about January 10.[3]

On January 11, DCI informed the Equicenter that Mr. Wiggins disputed ESI's report. ESI communicated this denial to the McLean regional office, and on January 12 Ms. Plumer was instructed by her supervisor, Sally Myers, to go to Superior Court personally and obtain a "hard copy" of the criminal record information that she had reported. Ms. Plumer obtained the hard copy and, on January 16, provided it to Ms. Myers. Upon reviewing this hard copy, Ms. Myers observed that the date of birth shown on the record of the conviction (December 15, 1963) did not match the birth date that ESI had been given for Mr. Wiggins. Further inquiry revealed that the individual who had been convicted of the alleged offense was James *Ray* Wiggins, not plaintiff James *Russell* Wiggins.

On January 16 or 17, Ms. Myers informed the Cleveland Equicenter by telephone that a discrepancy had been found. On January 17, Ms. Myers asked Ms. Plumer to conduct a reinvestigation to determine whether, notwithstanding the mistake, James Russell Wiggins in fact had a criminal record. Also on January 17, however, the Cleveland Equicenter sent to DCI its initial written report (the "January 17 report") containing its finding that, as communicated in the telephone call on January 10, Mr. Wiggins had a drug conviction in the District of Columbia in 1989.[4] Mr. Wiggins' employment was terminated by DCI on January 18.

On January 19, Mr. Wiggins visited the McLean regional office and requested disclosure of all information in his file relating to the criminal records check. Ms. Myers was not in the office at the time, and in her absence Mr. Wiggins was assisted by defendant Madden. Mr. Madden was unfamiliar with the Wiggins matter and did not know that a reinvestigation was in progress. In response to Mr. Wiggins' request for disclosure, Mr. Madden's secretary looked for but could not locate Mr. Wiggins' file, which was on Ms. Myers' desk at the time. Mr. Madden therefore contacted the Equicenter and asked that its file relating to the criminal records check on Mr. Wiggins be telecopied to the regional office so that disclosure could be made to Mr. Wiggins. The Equicenter responded to Mr. Madden's request by telecopying to him a copy of the January 17 report, which was the only written report

that Ms. Plumer could only have been told that James R. Wiggins plead to attempt to possess cocaine as per the court records. The court can not resolve such a factual dispute, and the information regarding the drug conviction was the information communicated in the report regardless of its veracity. Accordingly, with respect to plaintiffs' motions for partial summary judgment, the Court must assume that Ms. Plumer was told that Mr. Wiggins had been convicted of a felony drug charge, and with respect to defendants' motions, the Court must assume that she was only told of a plea to attempted possession.

The extent to which Ms. Plumer attempted to confirm with the clerk that this information in fact related to plaintiff James R. Wiggins, as opposed to some other individual by that name, is a disputed fact. Defendant ESI asserts that "Ms. Plumer confirmed this information with the clerk at Superior Court by providing James R. Wiggins' date of birth...." ESI's Statement of Material Facts Not In Dispute at ¶ 5. Although it is true that Ms. Plumer testified to this effect at her deposition, plaintiffs argue that a jury could disbelieve this testimony in light of the undisputed fact that the two birth dates in fact do not

match. The identity of the clerk is unknown, so the clerk cannot be asked to corroborate either story. The Court cannot resolve this factual dispute at this stage. Accordingly, with respect to plaintiffs' motions for partial summary judgment, the Court must assume that Ms. Plumer did "confirm" the information with plaintiff's date of birth, and with respect to defendants' motions, the Court must assume that she did not.

3. Although the term "clearance" is not defined in the papers, it seems clear that this refers to an initial communication of information by ESI to its customer preliminary to a final report.

4. There appears to be a genuine dispute of fact, which the Court cannot resolve at this stage, as to whether the Equicenter had been advised of the discrepancy prior to the time the January 17 report was sent to DCI. Accordingly, for purposes of evaluating plaintiffs' motions for partial summary judgment, the Court will view this factual issue in the light most favorable to defendants and assume that the Equicenter had not been advised, and for purposes of evaluating defendants' motions the Court will assume that it had.

concerning Mr. Wiggins that was in existence at that time. Mr. Madden then provided Mr. Wiggins with a copy of that January 17 report.

On either Friday, January 19 or Monday, January 22, the McLean regional office completed its "reinvestigation" of Mr. Wiggins' criminal record and determined that in fact he had no criminal drug conviction in the District of Columbia. This information was communicated to the Equicenter, and on January 23 the Equicenter prepared a corrected report stating that Mr. Wiggins had no criminal convictions in Washington D.C. The parties appear to dispute, however, when this corrected report was sent to and actually received by DCI; plaintiffs contend that the report had not been received by DCI as of February 7, 1990. This lawsuit was commenced on January 29, 1990.

## III. DISCUSSION

A district court may grant summary judgment if it is clear that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). For purposes of evaluating a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. *Id.* (citations omitted).

### A. The FCRA Counts.

While investigative reports enable an employer to make informed evaluations about a possible employee's suitability for employment, the nature of credit reporting poses a great potential for abuse. In enacting the FCRA, Congress recognized "the need to insure that credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." *Id.* § 1681(b).

### 1. Count One.

As described above, the Complaint contains five counts brought under the FCRA. The latter four-Counts Two, Three, Four, and Six-are each brought under a specific section of the FCRA, which is identified in the heading introducing that count. Unlike those counts, Count One contains no reference to any specific section. Instead, it is captioned merely "Violation of the Federal Credit Reporting Act."

In the text under this general heading, however, plaintiffs assert that defendants "willfully fail[ed] to maintain and practice reasonable procedures that would have assured accuracy of reporting criminal records," Compl. at ¶ 16, and "fail[ed] to maintain reasonable procedures to assure accurate reporting of criminal records...." *Id.* at ¶ 17. It is clear from these statements that Mr. Wiggins is alleging a "willful" violation[5] of 15 U.S.C. § 1681e(b). Defendant ESI, in its memoranda, appears to assume that this is what is alleged. Moreover, Plaintiffs' Motion for Partial Summary Judgment only requested judgment for "willful and deliberate violations of the Fair Credit Report-

---

**5.** The FCRA contains two provisions imposing civil liability for violations of the Act. The first of these provisions imposes liability for "willful noncompliance," and allows recovery of actual damages, punitive damages, and attorneys fees. 15 U.S.C. § 1681n. It is apparent from the Complaint and plaintiffs' opposition to summary judgment that they are asserting a claim of willful violation of the Act in this count. *See, e.g.,* Compl. at ¶ 18 (claiming that the actions of ESI in "willfully violating the FCRA has permanently impaired the ability of plaintiff James Russell Wiggins to be employed and has willfully caused plaintiff James Russell Wiggins substantial future damages").

ing Act...." Pls.' Mot.Summ.J. ¶ 1.[6]

■ Section 1681e(b) of the Act provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The Act does not hold consumer reporting agencies strictly liable for the dissemination of inaccurate information, *id.; Stewart v. Credit Bureau, Inc.,* 734 F.2d 47 (D.C.Cir.1984) ("[A] plaintiff cannot rest on a showing of mere inaccuracy...."); *Thompson v. San Antonio Retail Merchants Assoc.,* 682 F.2d 509, 513 (5th Cir.1982), but rather "establishes the broad minimum standard of 'reasonable procedures' and requires consumer reporting agencies to adopt procedures which meet that minimum standard." *Hauser v. Equifax, Inc.,* 602 F.2d 811, 814 (8th Cir.1979). In order to survive summary judgment, a plaintiff must "minimally present some evidence" from which it can be inferred that a consumer reporting agency failed to follow a minimum standard of reasonable procedures. *Stewart,* 734 F.2d at 51.

■ Although the term "willful" is not defined in the Act, it is clear that neither malice nor evil motive need be established for a finding of "willfulness" to be made. *See Stevenson v. TRW, Inc.,* 987 F.2d 288, 294 (5th Cir.1993) (citing *Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 151 (5th Cir.1983)). The Court therefore believes that "willful" under the Act is demonstrated by a showing of "knowingly and intentionally committed an act in conscious disregard for the rights of others." *See id.* at 293 (citing *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), *cert. denied,* 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987)).

■ Upon a review of the record, the Court concludes that there are genuine disputes of fact concerning the existence and execution of the procedures of ESI, rendering summary judgment on this issue inappropriate for either side. For example, there is a dispute as to whether Ms. Plumer in fact "confirmed" the criminal record information with plaintiff's date of birth or used other procedural safeguards in determining the identity of Mr. Wiggins. There is also a dispute regarding ESI's interoffice information communications procedures-in this case, whether the regional office notified the Equicenter that a discrepancy had been found prior to the dissemination of the January 17 report.

The adequacy of the consumer reporting agency procedures must be judged on what is reasonably prudent under the circumstances. *Stewart,* 734 F.2d at 51. Evaluating the adequacy of these procedures "involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy": a task that this Court feels would be best left for the trier of fact in this case. Moreover, this Court cannot say that the record shows willfulness, or the absence of willfulness, as a matter of law. Rather, the Court believes that it should be left to the jury to resolve the disputed facts and decide whether those facts demonstrate a willful failure to follow reasonable procedures.[7] Therefore, plaintiffs' and ESI's motions for summary judgment with respect to this Count are denied.

### 2. Count Two.

Count Two of the Complaint is introduced by the following heading:

*Violation of FCRA 15 U.S.C. 1681(c)(b) [sic] Willful Failure to Reinvestigate & Accurately Report*

Compl. at 8. It is quite difficult to understand what plaintiffs are attempting to allege

---

**6.** Plaintiffs also claim the ESI "did publish the same written report ... at a time when ESI knew or should have known that Plaintiff James Russell Wiggins had no criminal record." Compl. at ¶ 21. This statement appears to allege negligent violations; therefore, Count One will be treated as alleging willful and negligent violations of section 1681e(b). However, this motion for summary judgment only considers willful violations of the Act.

**7.** *Cf. Collins v. Retail Credit Co.,* 410 F.Supp. 924, 931–32 (E.D.Mich.1976) (evidence showing that, *inter alia,* investigation procedures were haphazard, that company did not comply with request for all information in consumer's files, and that company did not comply with request for reinvestigation supported jury's finding of willful noncompliance with statute).

in this count. Although there is a provision in the FCRA that corresponds to the citation 15 U.S.C. § 1681c(b), that provision has nothing to do with "reinvestigation" and, in fact, has no application to this case. Subsection (a) of section 1681c generally prohibits the reporting of certain categories of "obsolete information," such as records of arrest or conviction of a crime that antedate the report by more than seven years. *See* 15 U.S.C. § 1681c(a)(5). Subsection (b) of section 1681c sets forth certain exceptions to this general prohibition on the reporting of obsolete information. *See id.* § 1681c(b). The criminal conviction reported in this case, although inaccurate, is not "obsolete" within the meaning of this section, and therefore this section has no application.

There is a section of the FCRA that deals with the failure of a reporting agency to "reinvestigate" a consumer's claim that a report contains inaccurate information. However, that section, 15 U.S.C. § 1681i, provides the basis for the claim asserted in Count Three of the Complaint, which is discussed below, and cannot provide a basis for Count Two as well.

Because neither the cited section of the FCRA nor the allegation of failure to reinvestigate provides a basis for a cause of action under Count Two of the Complaint, and because no other acceptable basis has been asserted,[8] Defendants' Motion for Summary Judgment will be granted with respect to Count Two.

#### 3. Count Three.

In Count Three of the Complaint, Mr. Wiggins alleges that ESI violated sections 1681i and 1681n of the Act. Section 1681i, as mentioned above, creates a duty on the part of consumer reporting agencies to "reinvestigate" disputed information contained in a report within a "reasonable period of time." 15 U.S.C. § 1681i(a). If after such reinvestigation the disputed information is found to be inaccurate or cannot be verified, the consumer reporting agency must "promptly delete such information." *Id.* Section 1681n creates civil liability for "willful noncompliance" with this or any other any provision of the Act.

In this case, it is undisputed that ESI did reinvestigate after being advised that Mr. Wiggins disputed the criminal record information. Thus, plaintiffs' contention must be that ESI failed to conduct this reinvestigation within a "reasonable period of time," or that ESI failed to "promptly delete" the criminal record information after finding it to be inaccurate.

It is undisputed that an employee of ESI at the regional office first became aware that the criminal record information was inaccurate before ESI issued the written report containing the inaccurate information on January 17. It is also undisputed that ESI prepared a corrected report on January 23. However, the parties do dispute the period of time required for this correction to actually reach Mr. Wiggins's employer. It is also disputed whether Mr. Wiggins, in fact, complained about the accuracy of the report directly to ESI, a requirement for liability under § 1681i(a).[9] *See* Compl. at ¶ 27; ESI's Mot.Summ.J. and Opp'n Pls.' Mots. Partial Summ.J. at IV.B.

---

8. The text under the heading for Count Two contains references to possible theories of recovery and sections of the FCRA other than the two contained in the heading and discussed in the text above. For example, in paragraph 24 plaintiffs assert:

> [D]efendant ESI did in willful violation of 15 U.S.C. § 1681(c)b [sic] and 15 U.S.C. § 1681(e) [sic] thru [sic] 1681(p) [sic] did [sic] fail and refuse to provide plaintiff James Russell Wiggins with a corrected report showing that he had no criminal record and did further slander, libel and defame plaintiff James Russell Wiggins by distribution of a false report. . . .

*Id.* at ¶ 24. The reference to libel, slander and defamation is ineffectual because those torts provide the basis for Count Five of the Complaint. With respect to the reference to sections 1681e through 1681p, the Court believes that it is not its role to search these sections of the FCRA for some provision that may be applicable to the allegations in the complaint. Count Two will therefore be treated as alleging, as its heading asserts, a "willful failure to reinvestigate and accurately report" and a violation of 15 U.S.C. § 1681(c)(b).

9. *See* 15 U.S.C. § 1681i(a) ("[A]nd such dispute is *directly conveyed* to the consumer reporting agency *by the consumer*. . . .").

Based upon the record, this Court concludes that ESI's motion for summary judgment on this count must be denied.[10] A jury should resolve these factual disputes and determine whether ESI willfully violated the obligations imposed by this section of the Act.[11]

#### 4. Count Four.

In Count Four, Mr. Wiggins alleges that ESI willfully violated section 1681k of the FCRA. This section requires a credit reporting agency that is furnishing information for employment purposes, where such information is a matter of public record and is likely to have an adverse impact on the candidate, to *either* notify the consumer of the fact that public record information is being reported along with the name and address of the person who requested the report *or* maintain "strict procedures" designed to insure that any such reported information is "complete and up to date." 15 U.S.C. § 1681k.

The threshold requirements for the application of this section are clearly met in this case-the information was reported for employment purposes, was a matter of public record, and was certainly likely to have an adverse impact on the prospective employee. In addition, it is undisputed that defendants did not notify plaintiff that criminal record information was being reported. ESI therefore relies on the alternative portion of the statutory provision, which allows the reporting agency to avoid notification to the consumer if "strict procedures" are maintained. ESI argues that it is entitled to summary judgment on this count because there is no evidence from which a reasonable jury could find that it failed to maintain "strict procedures" to ensure that the information reported was accurate and up-to-date. Alternatively, ESI argues that (even if a jury could find that it failed to maintain strict procedures)

there is no evidence from which a jury could find that its failure to maintain such procedures was willful. Plaintiffs, on the other hand, argue that the undisputed facts demonstrate a willful violation of this section as a matter of law.

Upon review of the record, this Court concludes that there are, as described above, disputed issues of material fact rendering summary judgment inappropriate for either side. There are sufficient facts from which a jury could find that ESI failed to maintain "strict procedures" and that such failure was willful; however, the court believes that a reasonable jury could also reject a finding of willfulness. Accordingly, both plaintiffs' and defendants' motions for summary judgment with respect to this count will be denied.

#### 5. Count Six.

Section 1681g of the FCRA requires credit reporting agencies to "clearly and accurately" disclose the "nature and substance of all information (except medical information) in its files" upon consumer request. 15 U.S.C. § 1681g. Mr. Wiggins alleges in Count Six that ESI willfully failed to comply with this provision on January 19, when he appeared at the McLean office and asked to see the information in his file relating to the criminal records check.

It is undisputed that ESI provided Mr. Wiggins with a copy of the January 17 report, which was the only written report in existence at the time of his visit. Mr. Wiggins' argument, therefore, must be that defendants violated this section by failing to disclose the fact that a reinvestigation was in progress and that a hard copy of the alleged conviction-showing that it in fact did not relate to plaintiff-had been obtained. Defendants argue that even if this failure constituted a violation of section 1681g,[12] there is no

---

10. Mr. Wiggins has not moved for summary judgment with respect to this Count.

11. *Cf. Lowry v. Credit Bureau, Inc.,* 444 F.Supp. 541 (N.D.Ga.1978) (noting that a delay of 49 days between the notice of a contested fact and the correction constituted a "reasonable period" under the FCRA was a question of fact for the jury).

12. Defendants do not concede a violation. To the contrary, they argue that they "substantially complied" with section 1681g by providing Mr. Wiggins with a copy of the January 17 report, which was the only report that existed at the time. The Act, however, broadly requires the disclosure of "[t]he nature and substance of all information" in the agency's files concerning the consumer. It is undisputed that at the time of

evidence from which a jury could find that the violation was willful.

There is no evidence that Mr. Madden was aware at the time of Mr. Wiggins' appearance on January 19 that Mr. Wiggins' file was in the process of a reinvestigation.[13] The parties dispute, however, whether the Equicenter had been advised by January 19 that a discrepancy had been found. If the Equicenter had been so advised but had nevertheless failed to convey that information to Mr. Madden so that it could be disclosed to plaintiff, the Court believes that a jury could find that ESI's violation of its disclosure obligations was willful. On the other hand, if the Equicenter were not aware of the discrepancy, a jury could reasonably conclude that ESI's failure to disclose "all information" in Mr. Wiggins' file was merely negligent rather than willful. For these reasons, the Court believes that there are genuine factual disputes rendering summary judgment on this count inappropriate.

### B. The Defamation Count.

In Count Five, Mr. Wiggins asserts the common-law claims of libel, slander, and defamation. In their motion for partial summary judgment, plaintiffs allege that the mailing of and telephone calls regarding the erroneous consumer employment report to District Cablevision constituted "false, derogatory oral and written statements to third parties." Compl. at ¶ 35. Plaintiffs also allege that defendant Madden "willfully, maliciously and falsely" provided inaccurate and false information to third parties. Compl. at ¶ 37.

Following the telephone report of a March 1989 conviction for possession of cocaine to the regional office and the Equicenter, the Equicenter communicated this information to DCI on or about January 10, 1990. On January 17, ESI ordered reinvestigation of Mr. Wiggins' case, but also sent the initial, erroneous report to DCI. Mr. Wiggins' employment was terminated by DCI on January 18, prompting his visit to the McLean regional office for disclosure of all information in his file relating to the criminal records check on January 19. Defendant Madden, unfamiliar with the Wiggins matter, did not know that a reinvestigation was in progress, could not find Mr. Wiggins' file, and contacted the Equicenter for a telecopy of the criminal records check. Defendant Madden made disclosure of the only written report concerning Mr. Wiggins at that time, providing Mr. Wiggins with a copy of that January 17 report.

■ The FCRA recognizes that consumer reporting agencies disclose extensive credit information to consumers and to businesses "for meeting the needs of commerce," see, e.g., 15 U.S.C. § 1681(b), 1681g, and creates civil liability for failure to comply with its requirements. However, the FCRA expressly limits the potential liability of these consumer reporting agencies [14] by preempting

---

Mr. Wiggins' visit ESI had received from Ms. Plumer the hard copy of the criminal record, which demonstrated that the subject of that record was not the plaintiff. The Court believes that a jury could conclude that this information, which was not disclosed to Mr. Wiggins, is embraced within the broad category of the "nature and substance of all information" in ESI's files, and therefore should have been disclosed.

Defendants also argue that summary judgment is appropriate with respect to this count because Mr. Wiggins did not comply with section 1681h, which sets forth the conditions for the disclosure required in section 1681g. Section 1681h(a) requires that the reporting agency be given "reasonable notice" before disclosure is demanded. 15 U.S.C. § 1681h(a). Defendants argue that Mr. Wiggins arrived at the McLean office without an appointment on January 19, and therefore that, as a matter of law, reasonable notice was not provided. There is no indication, however, that Mr. Wiggins was instructed or requested to return later in order for full disclosure to be made. The Court cannot say that as a matter of law Mr. Wiggins failed to comply with section 1681h(a); it will be for the jury to determine whether "reasonable notice" was provided.

13. Although plaintiffs allege in their complaint that "[d]efendant Madden had actual and constructive knowledge that a true copy of the criminal records of James Ray Wiggins had been obtained," plaintiffs have submitted no evidence to support that allegation. It is well established that a party may not rely on conclusory allegations in their pleadings in opposition to a well-grounded motion for summary judgment.

14. *See Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980) ("It is clear that the qualified immunity provided for by the FCRA is meant by Congress to be the 'quid pro quo for full disclosure.'") (quoting *Retail Credit Co. v. Dade*

state common law privacy causes of action.[15] Section 1681h(e) of the Act provides:

> Except as provided in sections 1681n and 1681o of this title, *no consumer may bring any action or proceeding in the nature of defamation,* invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added). This section has been interpreted to provide a qualified immunity for consumer reporting agencies except as to false information furnished with malice or with willful intent to injure. *Thornton v. Equifax, Inc.,* 619 F.2d 700 (8th Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). Thus, in a defamation action pursuant to proper disclosure under the Act,[16] "malice or willful intent to injure" must be alleged.

■ This Court agrees with defendants that there is no evidence in the record from which a jury could find that defendants willfully intended to injure Mr. Wiggins by disseminating the false report. However, the statute also allows common law actions if the information is furnished with "malice." Although the term "malice" is not defined in the Act, this Court believes it is appropriate to borrow the meaning given to the term in the related context of libel litigation for summary judgment purposes.[17] In that context, a statement is deemed to have been made with malice when the speaker either knew it was false or acted in reckless disregard of its truth or falsity. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). Reckless disregard, in turn, requires evidence that the speaker entertained actual doubt about the truth of the statement. *See St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

■ The undisputed evidence is that at least one employee of ESI, Sally Myers, knew that the James R. Wiggins who was the subject of the alleged conviction was not the James R. Wiggins who was the subject of the report at the time that the January 17 report was sent to DCI. In addition, the parties dispute whether this information was communicated to the Equicenter prior to the dissemination of the January 17 report. If this information had been communicated, the Court believes that a jury could find that ESI indeed had actual doubt about the truth of the January 17 report. With respect to defendant ESI, therefore, the Court believes that the record presents a jury question as to whether ESI acted with "malice" under section 1681h(e). Accordingly, plaintiffs' and

County, 393 F.Supp. 577, 584 (S.D.Fla.1975)); *see also Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1069 (9th Cir.1992); *Grant v. TRW, Inc.,* 789 F.Supp. 690, 693 (D.Md.1992).

15. *See Henry v. Forbes,* 433 F.Supp. 5, 7 n. 1 (D.Minn.1976) ("The Act provides that unless defendants have procured or used false information "with malice or willful intent to injure" the plaintiff, an action under the statute must stand in lieu of any other action in the nature of invasion of privacy, negligence, or defamation.").

16. The facts underlying plaintiffs' claims of defamation, libel, and slander relate to disclosures made pursuant to §§ 1681e, 1681g or 1681m. Thus, made pursuant to the Act, not within a qualification of 1681h(e).

17. This notion is not novel. As stated in *Thornton v. Equifax, Inc.:*

> While the Act itself does not define ["malice or willful intent to injure"], the Supreme Court in *New York Times v. Sullivan* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 did define the malice necessary to overcome a conditional privilege under the first amendment as "with knowledge that it was false or with reckless disregard of whether it was false or not." ... The qualified immunity under the Act, however, is not based upon a constitutional privilege as in *New York Times* nor has such protection been extended to credit reporting agencies in states lacking conditional privileges for such agencies.... We cite the *New York Times* standard as an example of a type of malice necessary to overcome a qualified privilege.

*Thornton v. Equifax, Inc.,* 619 F.2d 700, 705 (8th Cir.1980). Although the *New York Times* standard has not been established as the standard applicable under § 1681h of the FCRA, this Court believes it provides an appropriate definition of malice necessary to overcome the qualified privilege. *See also Rhodes v. Ford Motor Credit Co.,* 951 F.2d 905, 906 (8th Cir.1991).

ESI's motion for summary judgment with respect to Count Five will be denied.[18]

■ The defamation claim against defendant Madden, however, is another matter. Mr. Wiggins contends that Mr. Madden defamed him by repeating the allegations contained in the January 17 report during the January 19 meeting. The Court concludes that there is no evidence for a finding of malice with respect to Mr. Madden. There is no evidence that he was personally aware that the Wiggins report was in the process of reinvestigation or that a discrepancy had been found. Mr. Madden's involvement in this case occurred only as a result of his efforts to make disclosure to Mr. Wiggins as required by section 1681g of the Act, and the defamation claim against him would therefore appear to be precisely the type of claim the statute was intended to preempt. *See* 15 U.S.C. § 1681h(e) (defamation actions "based on information disclosed pursuant to section 1681g" preempted absent a showing of malice). Accordingly, Mr. Madden's motion for summary judgment with respect to Count Five will be granted.[19]

C. The Civil Rights Count.

■ In Count Seven of the Complaint, plaintiffs allege civil rights violations, including 42 U.S.C. §§ 1981 and 1983.[20] Mr. and Mrs. Wiggins, who are African Americans, claim that ESI "intentionally discriminate[d]" against them and violated the civil rights statutes by "fail[ing] to exercise that degree

of care and caution in that [sic] would have been afforded to white citizens...." Compl. at ¶¶ 45, 45(a).

Plaintiffs' allegation that ESI violated section 1983 is easily dismissed. 42 U.S.C. § 1983 states:

Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,* subjects, or causes to be subjected, any citizen of the united States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (emphasis added).

It is, of course, well established that state action is an essential element of an action under section 1983. *See West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniel v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)). In this case, there is no allegation, nor could there be, that ESI acted under color of state law.[21]

■ The 42 U.S.C. § 1981 claim fails because there is no evidence from which a jury

---

**18.** ESI also argues that the defamation claim is barred by the common-law "common interest" privilege. ESI acknowledges, however, that this is a qualified privilege which, like the immunity conferred by the statute, is defeated by a showing of malice. Accordingly, even if this common-law privilege were not superseded by the privilege afforded by the statute, summary judgment on this theory would be inappropriate for the reasons discussed in the text.

**19.** The defamation claim in Count Five and the FCRA claim in Count Four are, along with the RICO count with respect to which judgment will be granted to defendants for reasons discussed *infra,* the only counts naming Mr. Madden as a defendant. Accordingly, the Court finds that defendant Madden is entitled to the entry of judgment in his favor.

**20.** Plaintiffs also allege violations of the Equal Protection Clause and the Due Process Clause of the Constitution. *See* Complaint ¶ 45, 45(e).

There is no evidence of any unequal treatment with regard to race justifying application of these clauses to this case.

**21.** Plaintiffs may be suggesting that a credit reporting agency should be held to be acting under color of law when complying with the FCRA. If so, plaintiffs misunderstand the nature of the FCRA. The FCRA was created "to require consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information inc accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). The FCRA is regulatory in nature and does not vest the reporting agencies with state or governmental powers.

could find that ESI intentionally discriminated or was even aware of Mr. Wiggins' race at any point during the investigation, preparation, and dissemination of the January 17 report.[22] The only evidence regarding race is the affidavit of Tami Plumer, the ESI employee who conducted the investigation of Mr. Wiggins' criminal record. She states: "At no time during my investigation was I aware of the race of this subject, James R. Wiggins." Aff. Tami Plumer, Def.'s Memo. Supp. Mot.Summ.J. and Opp'n Pls.' Mot.Partial Summ.J., Ex. 4 at 2. She also states that "ESI does not use the individual's race as a method of verification for a criminal records pre-employment check." *Id.* There is no evidence that Mr. Wiggins' race was one of the items of information that DCI provided to ESI when the records check was requested on January 2, and plaintiffs have offered no evidence in rebuttal. Because there is no evidence from which a jury could find that ESI discriminated against Mr. Wiggins on the basis of race, the Court concludes that ESI is entitled to judgment as a matter of law with respect to the civil rights claim in Count Seven.[23]

## D. Mrs. Wiggins' Claims.

In Count Eight of the Complaint, Mr. Wiggins' wife, Karen Wiggins, seeks damages arising out of the dissemination of the erroneous information. First, she seeks damages for loss of consortium, alleging that ESI's actions "interfered with the marriage relationship of [p]laintiffs," and that plaintiffs "have mutually suffered loss of society, companionship, consortium, and domestic services." Compl. at ¶ 52. Second, she seeks damages for personal injury and emotional distress, alleging that ESI's actions placed her under "great emotional stress and strain," *Id.* at ¶ 49, ultimately causing her to suffer a miscarriage and other physical problems. *Id.* at ¶¶ 49–53.

It is undisputed that at the time of defendants' allegedly illegal and tortious conduct in January 1990,[24] Karen and James Russell Wiggins were not legally married. In fact, at that time, Karen Wiggins was married to one Stephen Capers. Karen Wiggins and Mr. Capers were not divorced until March 8, 1990. *See* Defs.' Mot. Partial Summ.J. as to Karen Wiggins Only Ex. A. Therefore, Karen and James Wiggins could not be lawfully

---

**22.** When plaintiffs' asserted their § 1981 claim, the text of the statute read as follows:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Congress enacted the 1991 amendments to § 1981 in response to the Supreme Court decision in *Patterson v. McClean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132, which held that racial harassment claims related to existing employment conditions were not actionable and excluded recovery for conduct occurring after the formation of a contract which did not interfere with the enforcement of the contract.

In expanding the scope of actions covered by § 1981, Congress added a definition for "make and enforce contracts":

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

One of the issues the Supreme Court will address this Term is whether the 1991 amendments to § 1981 should be given retroactive application. This Court does not reach the issue of the effective date of the 1991 amendments for there is no evidence of any unequal treatment whatsoever on the basis of race.

**23.** In their opposition to summary judgment on this count, plaintiffs assert that the facts establish a violation of the District of Columbia Human Rights Statute in preparing their report. There is no reference to a violation of this D.C. statute, however, in the complaint and it was not considered in this motion for summary judgment.

**24.** With the exception of Count Nine, plaintiffs' amended complaint points to tortious conduct occurring in January 1990. *See, e.g.,* Compl. at ¶¶ 6, 9, 11–12. In plaintiffs' opposition to defendants' motion for partial summary judgment, however, plaintiff asserts that the "June 26, 1990 date of tortious conduct and injury" should provide a basis for relief. These alleged June activities were not pled as a basis for recovery in the complaint and were not considered in this motion for summary judgment.

married, common law or otherwise,[25] until March 8, 1990. Karen and James Wiggins were married by legal ceremony on June 6, 1990. *See id.* Ex. B.

■■■■ A lawful marital relationship must exist "at the time of the tortious conduct toward and resultant injury to one spouse" before the other spouse can bring an action for loss of consortium. *See Stager v. Schneider,* 494 A.2d 1307, 1315 (D.C.1985); *accord Sawyer v. Bailey,* 413 A.2d 165 (Me. 1980); *Childers v. Shannon,* 183 N.J.Super. 591, 444 A.2d 1141 (1982); *Mehtani v. New York Life Insurance Co.,* 145 A.D.2d 90, 537 N.Y.S.2d 800, 804, app. dism'd, 74 N.Y.2d 835, 546 N.Y.S.2d 341, 545 N.E.2d 631 (1989); *see also* W. Page Keeton, et al., *Prosser & Keeton on Torts* § 125, at 932 (5th ed.1984). If the tortious conduct and injury "were known or knowable" prior to marriage, a spouse may not recover for loss of consortium damages. *Stager,* 494 A.2d at 1315. Because Karen and James Wiggins were not married at the time of defendants' allegedly tortious conduct, and because the fact of Mr. Wiggins' injury was known or knowable prior to their marriage,[26] Mrs. Wiggins may not assert a claim for loss of consortium under District of Columbia law.[27]

■■ In addition to damages for loss of consortium, Karen Wiggins also seeks to recover damages for personal injury and emotional distress. The Complaint does not identify any cause of action under which Mrs. Wiggins seeks to recover such damages; Count Eight is merely entitled "Loss of Con-sortium, Emotional Distress, and Personal Injury." Even if plaintiffs' intent, however, were to incorporate into Count Eight all of the causes of action set forth elsewhere in the Complaint, ESI would be entitled to summary judgment on this count. Karen Wiggins does not have a cause of action under any of the provisions of the FCRA relied upon elsewhere in the Complaint.[28]

Only persons to whom a credit report *relates* have standing to bring an action under this statute. *See Conley v. TRW Credit Data,* 381 F.Supp. 473, 474 (N.D.Ill.1974). In *Conley,* a husband and wife entered into a rental agreement to lease an apartment conditioned on the receipt of a favorable consumer credit check. The consumer credit reporting agency falsely reported that the couple owed former landlords approximately $1,000. The credit agency then refused to correct the alleged misinformation. When the husband and wife sued for violations of the FCRA, the defendants moved to dismiss the wife's claim, asserting that the credit report was made on the husband and "only incidentally" on the wife. *Id.* at 473. The court held that the purpose of the Act would be "circumvented by disallowing the wife, as to whom vital information is furnished in a credit report, to challenge the impartiality and fairness of reporting procedures. This view necessarily prevails when the realities of shared expenses, shared liabilities, and in this case shared injury are considered." *Id.* at 474. If a credit report refers and relates to both a husband and wife, both spouses

---

**25.** The Wiggins contend that they entered into a common law marriage in March 1990 by agreement. *See* Pls.' Opp'n to Defs.' Mot. for Summ.J. at ¶ 3; Aff. of James Russell and Karen Wiggins Supporting Pls.' Opp'n to Defs.' Mot. for Summ.J. The District of Columbia recognizes common law marriages. A common law marriage exists only if "a man and woman who are *legally capable* of entering into the marriage relation mutually agree, in words of the present tense, to be husband and wife, and consummate their agreement by cohabiting as husband and wife...." *Marcus v. Director, Office of Workers' Compensation Programs,* 548 F.2d 1044, 1048 (D.C.Cir.1976) (citing *U.S. Fidelity & Guaranty Co. v. Britton,* 269 F.2d 249, 251 (D.C.Cir.1959)) (emphasis added). However, the existence of or date of common law marriage is irrelevant to this motion because the tortious conduct and resultant injury to Mr. Wiggins was known or knowable to Mrs. Wiggins prior to their legal capability to marry.

**26.** In fact, Karen Wiggins wasn't divorced from Mr. Capers until more than a month after the filing of this lawsuit.

**27.** The complaint asserts that plaintiffs are citizens of the District of Columbia, Compl. at ¶ 3, and the parties appear to agree that District of Columbia law governs this issue.

**28.** The causes of action set out elsewhere in the complaint include violations of FCRA §§ 1681e(b), 1681c(b), 1681i, 1681n, 1681k, and 1681g, a common-law claim of defamation, civil rights violations, and a RICO claim.

would have standing to sue for damages under the Act. *Id.*

Mrs. Wiggins cannot recover under the Act for two reasons. First, as discussed above, she was not the wife of Mr. Wiggins at the time of the tortious conduct or resultant injury to Mr. Wiggins. She does not qualify as a "spouse." Second, she was not a person to whom vital information was furnished for a credit report. As contrasted to the situation in *Conley* where information concerning both spouses was integral to the purpose of the report,[29] the credit and background of Mrs. Wiggins was not important to the preparation or dissemination of this credit report. Moreover, no report was ever requested or issued for Karen Wiggins individually or jointly. Mem. Supp. Defs.' Partial Mot. Summ.J. as to Karen Wiggins Only.

Karen Wiggins is also barred from bringing an action for defamation arising out of the alleged defamation of James Wiggins; defamation is a personal claim and may not be asserted by third persons. *See Morgan v. Hustler Magazine, Inc.*, 653 F.Supp. 711, 718 (N.D.Ohio 1987) (citing *Young v. That Was The Week That Was*, 312 F.Supp. 1337, 1340 (N.D.Ohio 1969)) (dismissing a husband's claim for defamation based on the alleged defamation of his wife).

Nor does Mrs. Wiggins have a viable claim under the civil rights statutes or under RICO, for reasons explained elsewhere in this Opinion. Accordingly, Defendants' Motion for Partial Summary Judgment as to Karen Wiggins Only will be granted as to Count Eight and Count Nine, and Mrs. Wiggins will be dismissed as a plaintiff in this case.

E. The RICO Claim.

Plaintiffs claim that ESI, its employees, and defendant D. Jaye Madden violated RICO by perpetrating a "scheme to defraud plaintiff" and violate the FCRA. *See* Compl. at ¶¶ 62, 68. The supposed acts of racketeering activity relied upon by plaintiffs in this case are mail fraud and wire fraud, in viola-tion of 18 U.S.C. §§ 1341 and 1343. *See id.* at ¶¶ 62–63. It is plaintiffs' theory that defendants' interstate transmission of the inaccurate January 17 report by telephone, mail, and telecopy constituted a violation of these federal statutes, triggering RICO liability.

RICO imposes civil liability upon those who engage in certain "prohibited activities." Defined in 18 U.S.C. § 1962, "prohibited activity" requires proof of either "a pattern of racketeering activity" or the "collection of an unlawful debt." "Racketeering activity" is defined as any act or threat involving specified state-law crimes and any acts or offenses indictable under various specified federal statutes, including § 1343 wire fraud and § 1341 mail fraud. 18 U.S.C. § 1961(1) (West 1982 & Supp.1993).

A "pattern of racketeering activity" requires at least two acts of racketeering activity within a 10–year period. 18 U.S.C. § 1961(5). Thus, in order to establish liability under RICO, plaintiffs "must show that the racketeering predicates are *related, and that they amount to or pose a threat of continued criminal activity.*" *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis added). As the Supreme Court recently stated, "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902.

All of the alleged acts of racketeering activity relate to defendants' dissemination of the inaccurate information contained in the January 17 report and the alleged conspiracy to cover-up the alleged violations of the FCRA concerning the erroneous report. These acts occurred over a brief period of time and involved one injury to one victim. There is simply no evidence to support the allegations of "continued" or ongoing criminal activity in this case. Even if one

---

29. In *Conley,* the court noted that "[t]he credit of both husband and wife stood behind the apartment leasing contract; information concerning both persons was, therefore, significant to the instant transaction. The report indicated the nature and duration of the wife's employment as well as her compensation." *Conley,* 381 F.Supp. at 474.

accepts that the report was false and that defendants violated the FCRA regulations in disseminating that report, there is no evidence whatsoever from which a jury could find that defendants were engaged in any racketeering activity or "scheme to defraud" in violation of RICO.[30]

For these reasons, the Court concludes that defendants are entitled to summary judgment with respect to Count Nine of the Complaint.

## IV. CONCLUSION

For the foregoing reasons, an Order will be entered granting defendant ESI's motion for summary judgment with respect to Counts Two, Seven, Eight, and Nine, and denying that motion as to Counts One, Three, Four, Five and Six; granting defendant Madden's motion for summary judgment and entering judgment in favor of defendant Madden; and denying plaintiffs' three motions for partial summary judgment.

---

**30.** The complaint asserts that "witness tampering" and "extorsion" [sic] are additional predicate acts that support plaintiffs' RICO claim. However, there is no factual support for or explanation of the allegation of extortion or witness tampering in the complaint or in plaintiffs' opposition to the summary judgment motion.