### Harold E. WILLIAMS and Susan A. Williams, Plaintiffs,

v.

**EQUIFAX CREDIT INFORMATION SERVICES, a foreign corporation, and Hollingsworth Court Reporting, a foreign corporation, jointly and severally, Defendants.**

#### No. 94–CV–70410–DT.

United States District Court, E.D. Michigan, Southern Division.

Aug. 3, 1995.

---

5. Cited for principle that it is congressional policy to promote stability in banking system.

Robert B. Miller, Southfield, MI, for plaintiffs.

Xhafer Orhan, Detroit, MI, Freeman McKenzie, Larry E. Powe, Mt. Clemens, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on motion of Defendant Equifax Credit Information ("Equifax") for partial summary judgment. Plaintiffs filed a response, to which Defendant replied. The facts and legal arguments are adequately presented in the briefs, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D.Mich.Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's motion is DENIED.

## I. BACKGROUND

Plaintiffs, husband and wife, seek damages under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, claiming negligence and willful non-compliance, for injuries resulting from errors in a credit report issued by Equifax.

In February, 1993, Plaintiffs applied for a mortgage with The Mortgage Company of Michigan ("The Mortgage Company"), a non-party, to refinance their jointly owned home. After The Mortgage Company obtained credit reports for each of the Plaintiffs, they notified the Plaintiffs that two tax liens were indicated on Plaintiff Harold Williams' credit report. Subsequently, Plaintiffs claim they were told that their mortgage application was denied. The credit reports were issued by Equifax, based upon information supplied by Defendant Hollingsworth Court Reporting. Plaintiffs notified Equifax that the tax liens were in error, and obtained copies of

the liens from the Register of Deeds Office which showed that the liens belonged to another Harold Williams and did not apply to the Plaintiffs' property. After this information was provided to The Mortgage Company, the mortgage proceeded.

Plaintiffs notified Equifax of the error on the credit report in February, 1993, however the credit report was not corrected until approximately March 30, 1994. Plaintiffs claim that the inaccurate information caused a two week delay in the closing of the mortgage, resulting in the Plaintiffs' inability to secure the lower, original interest rate. Additionally, they claim that they have since applied for credit and have been denied. As a result, Plaintiffs claim injuries including mental distress, humiliation, embarrassment, emotional distress, and financial damages due to the higher interest rate. They seek specific performance and attorney fees, as well as monetary damages.

Equifax seeks partial summary judgment, claiming that Plaintiff Susan Williams does not have standing to sue under 15 U.S.C. § 1681, in that it was not her credit report that was false. Susan Williams counters this by claiming that, as she was a co-owner of the property the errant tax liens affected, her own credit worthiness was maligned, causing her to suffer injury separate from that of her husband.

## II. OPINION

### A. Standard of Review

Summary judgment is appropriate, after adequate time for discovery, only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See e.g. Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omit-

ted). The Supreme Court has stated that the standard the Court must apply in determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson, supra,* 106 S.Ct. at 2512.

In applying this standard, the Court must view all materials offered in support of a motion for summary judgment in the light most favorable to the non-moving party. *Id.,* 106 S.Ct. at 2510. Where "the moving party has carried its burden under 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted); *see also Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553.

### B. Recovery Under 15 U.S.C. § 1681

The FCRA, a subchapter of the Consumer Credit Protection Act, requires consumer reporting agencies to adopt reasonable procedures for meeting the needs of the business community without sacrificing accuracy or confidentiality, thus operating in a manner which is fair and equitable to the consumer. (Pub.L. 90–321, Title VI, § 602, as added Pub.L. 91–508, Title VI, § 601, Oct. 26 1970, 84 Stat. 1128). Courts have interpreted it as an act intended to protect consumers from having inaccurate information circulated, *Roseman v. Retail Credit Co., Inc.,* 428 F.Supp. 643 (D.C.Pa.1977), to protect the reputation of the consumer, *Ackerley v. Credit Bureau of Sheridan, Inc.,* 385 F.Supp. 658 (D.C.Wyo.1974). This subchapter was not enacted to protect consumers in procuring commercial credit, in that it only pertains to consumer credit. *Conley v. TRW Credit Data,* 381 F.Supp. 473 (D.C.Ill.1974).

Liability on the part of the consumer reporting agency is established in the following passage:

> Any consumer reporting agency . . . which is negligent in failing to comply with any requirement imposed under this subchap-

ter with respect to any consumer is liable to that consumer ...

15 U.S.C. § 1681o. Just as § 1681o deals with negligent violations, § 1681n deals with willful violations, using similar language. Additionally, § 1681e(b) states:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

The issue of standing to sue will thus turn on whether the report "relates" to that claimant.

## C. Standing to Sue

■ Equifax does not deny that it published errors on Harold Williams' credit report, however it does deny that any errors existed in the credit report of Susan Williams. In support, Equifax proffers the affidavit of J. Mullins, an employee of Equifax. Because Susan Williams did not allege that errors were contained in the credit report under her name, she has failed to establish an individual personal claim under the FCRA. Absent any error in her individual credit report, Susan Williams' claim arises solely from the error in the credit report of Harold Williams. The Court now turns to the question of whether standing to sue for an error on another's credit report is supportable under § 1681.

It does not appear that this issue has been addressed by the 6th Circuit, however it has arisen in other courts. In *Conley v. TRW Credit Data*, 381 F.Supp. 473 (N.D.Ill.1974), a husband and wife entered an apartment rental contract, contingent upon obtaining a favorable credit report. They brought suit under § 1681 after a credit report under the husband's name incorrectly showed that the couple had left another apartment while still owing money. The Defendant moved to dismiss the wife's claim because she was not the subject of the credit report. The *Conley* court held:

The language of § 1681e(b) clearly includes both plaintiffs in the instant case. The credit of both husband and wife stood

behind the apartment leasing contract; information concerning both persons was, therefore, significant to the instant transaction. The report indicated the nature and duration of the wife's employment as well as her compensation.

*Id.* at 474. The Court additionally noted that it would have been required to circumvent legislative intent to disallow the wife's claim, in face of "the realities of shared expenses, shared liabilities, and in this case shared injury." *Id.*

In the instant case, Susan Williams' credit history was also maligned by her husband's false credit report. The liens affected property jointly held. While Susan Williams' personal credit history was not falsely reported, the alleged negligence of Equifax affected her ability to obtain re-financing on the jointly held property. "A fair reading of the language and purpose of the statute compels the conclusion that both a husband and spouse to whom a credit report relates have standing to protest under § 1681e(b) ... when the report relates and refers to both of them" *Id.* While, here, the report does not refer to Susan Williams, there can be no question that the malignment of title on jointly held property relates to both parties.

A conclusion contrary to *Conley* was reached under slightly different circumstances. In *Wiggins v. Equifax Services, Inc.*, 848 F.Supp. 213 (D.D.C.1993), the wife of an individual who was the subject of a false criminal records check was precluded from recovery under the FCRA. The court based this decision upon two separate grounds. First, the couple was not married at the time of the injury, and second, the credit and background of the wife were not included in the report. The *Wiggins* court distinguished *Conley* by noting that in *Conley*, information concerning both spouses was integral to the report.

The facts of *Wiggins* are distinguishable from those in *Conley*, as the injuries alleged by the wife in *Wiggins* were exclusively derivative in nature. The husband's credit report in *Wiggins* did not disparage the separate credit worthiness of the wife, as it did in *Conley*.

In *Middlebrooks v. Retail Credit Co.*, 416 F.Supp. 1013 (N.D.Ga.1976), a wife's claim under § 1681 alleged that she was denied access to her credit file. The Defendant claimed that it did not have a "file" on the wife, however the wife claimed that homeowner's coverage in her own name was not renewed on the basis of information provided by the Defendant. The Court stated that even though the husband's file did not have the wife's name on it, the file contained information concerning and affecting her, and thus it was the wife's "file" by definition. The Court's decision focused on the Act's definition of the term "file" as, "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

In the case at bar, Susan Williams is not referred to within her husband's credit report file, however, on the basis of false information provided by Equifax, she was temporarily unable to obtain refinancing of property she held jointly with her husband. The tax liens were allegedly imputed to Susan Williams' credit worthiness.

In *Koropoulos v. Credit Bur., Inc.* 734 F.2d 37 (D.C.Cir.1984), a wife was denied credit based upon the credit report of her husband. The *Koropoulos* court focused on the Act's definition of a consumer report as, "any ... communication bearing on a consumer's credit worthiness, credit standing, credit capacity...." 15 U.S.C. § 1681b. The Court held that since the husband's report had a bearing on the wife's credit worthiness, it was not a violation of § 1681 for the Defendant to provide the husband's credit report information to a potential creditor of the wife, "because it would constitute a consumer report on Mrs. Koropoulos." *Id.* at 46. "If Lord & Taylor [sic] denied Mrs. Koropoulos a credit card because of inaccuracy in Mr. Koropoulos' report, that inaccuracy harmed her. We can see no logical reason why the mere fact that the harmful inaccuracy appeared in another individual's credit report should shield a credit reporting agency for harm to an individual flowing from a negligent violation of the act." *Id.* at 47.

In the instant case, the credit file of Harold Williams was a "communication bearing on" the credit worthiness of Susan Williams, and thus, to deny her standing to sue under § 1681 would be improper.

These cases provide a proper frame of reference for a decision on the facts here. Section 1681 is thus interpreted to provide standing to a party when a credit report damages that party's individual credit worthiness. It does not provide standing to a party who's injuries are merely derivative of the injury to another party's credit worthiness.

Had her ability to obtain credit not been affected by the error in her husband's credit report, Susan Williams would not have standing to sue under § 1681. Since she allegedly suffered impairment to her own ability to obtain credit when she was temporarily unable to secure re-financing on property of which she was a co-owner due to the error of Equifax, Susan Williams has standing to sue. Therefore, Equifax's Motion for Partial Summary Judgment is DENIED.

### III.   CONCLUSION

For the above stated reasons, the Court finds that Plaintiff Susan Williams has standing to sue. Accordingly, Equifax is not entitled to judgment as a matter of law. Defendant Equifax's Motion for Summary Judgment is, therefore, DENIED.

IT IS SO ORDERED.